STATE of North Dakota, Plaintiff and Appellee,

v.

Glen GRANRUD, Defendant and Appellant.

Cr. No. 728.

Supreme Court of North Dakota.

Jan. 29, 1981.\*

As Amended Feb. 20, 1981.

---

\* Application for Writ of Certiorari has been filed in United States Supreme Court.

LeRoy Anseth, State's Atty., Williston, for plaintiff and appellee; argued by Cathy Howe Schmitz, Asst. State's Atty.

Bair, Brown & Kautzmann, Mandan, for defendant and appellant; argued by Dwight C. H. Kautzmann, Mandan.

SAND, Justice.

This is an appeal by the defendant, Glen Granrud, from a jury verdict of guilty of manslaughter.

In the late evening of 15 Oct. 1979 Granrud and a friend, Clifford Ling, were involved in an incident in a parking lot and alley in Williston, North Dakota, in which Alan Turner was stabbed. Turner died as a result of a knife wound to the heart.

Prior to the knifing, Granrud and Ling had been drinking at various liquor establishments in Williston for approximately five hours and were on their way to another liquor establishment, the Bavarian Room. As they were walking to the Bavarian Room, they observed Turner "herding" three 12- to 15-year old children to a parking lot behind the Northern Hotel or what is referred to as the "Lag House" and accusing the children of throwing a beer bottle at his pickup.

Granrud and Ling approached Turner and words were exchanged concerning Turner's conduct toward the children. There is conflicting testimony as whether or not this confrontation was in an alley or in a parking lot behind the "Lag House." There is a ledge approximately two feet high between the alley and the parking lot. Ling testified that the initial confrontation occurred in the alley. Granrud, Tony Arcand (one of the young boys), and Gary Clough, a friend of Turner's, testified that the initial confrontation occurred in the parking lot. During the course of the confrontation, Turner pulled a gun and waved it in the general direction above Granrud's head. At this point the initial confrontation ended and Turner walked back to his pickup. The testimony is conflicting as to whether or not Turner put the gun in his pickup at this time, and as to whether or not Granrud and Ling started to leave the area. Turner then started toward Ling and Granrud and a second confrontation ensued. During this confrontation, Turner took several swings at both Ling and Granrud as they backed up. The last swing taken by Turner occurred as he stepped from the parking lot down to the alley and resulted in Granrud's glasses being knocked off. After this swing, Turner staggered back and fell to his knees. There was testimony that there was a red mark and blood on Turner's shirt after this confrontation. Turner died approximately four hours later as a result of a knife wound to the heart.

Granrud was subsequently arrested with a "buck knife" in his possession and charged with manslaughter. A 12-person jury returned a verdict of guilty against Granrud, from which he appealed to this Court.

Granrud contends the trial court should have granted his motion for acquittal pursuant to Rule 29(a), North Dakota Rules of Criminal Procedure, after the State rested its case. Granrud asserts that he established the validity of his alleged self-defense through cross-examination of the State's witnesses, and that in light of this evidence the State had not met its burden of proof at this point.

Rule 29(a), NDRCrimP, provides as follows:

"(a) Motion Before Submission to Jury.

"The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right."

In *State v. Holy Bull*, 238 N.W.2d 52, 57 (N.D.1975), we addressed the requirements of a motion of acquittal under Rule 29, NDRCrimP, as follows:

". . . the trial court is required to approach the evidence from a standpoint most favorable to the prosecution, and is required to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt the motion for judgment of acquittal must be denied. 2 Wright & Miller, Federal Practice and Procedure, § 553, p. 486."

We have also observed that circumstantial evidence alone may justify a conviction, provided it is of such probative force as to enable the trier of fact to say that the defendant is guilty beyond a reasonable doubt. *State v. Chyle*, 297 N.W.2d 409 (N.D.1980); *State v. McMorrow*, 286 N.W.2d 284 (N.D.1979). In instances in which circumstantial evidence is used, the

role of the Supreme Court at the appellate level is to merely review the evidence to determine if there is competent evidence that allows the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *State v. McMorrow, supra; State v. Allen*, 237 N.W.2d 154 (N.D.1975).

At the close of the State's evidence five witnesses had testified. Tony Arcand had testified as to what he observed until the time Turner pulled the gun. Ling and Clough testified as to what they observed and heard during the incident. As already noted, some of their testimony was conflicting. Dr. Philip Ruffalo testified to the treatment and cause of death of Turner. Police Chief Raymond Atol testified as to the investigation and apprehension of Granrud with the "buck knife" in his possession.

■ Our review of the evidence, and inferences that could be drawn from the circumstantial evidence, from a standpoint most favorable to the prosecution reflects that there is substantial competent evidence for the jury to draw the inference of guilt, even in light of the alleged self-defense. Accordingly, we conclude that the trial court properly denied Granrud's motion for acquittal.

The second claim of error raised by Granrud concerns the instruction on self-defense.

Granrud asserts the trial court should have instructed the jury with North Dakota Pattern Jury Instruction 1716 on the right of self-defense. That instruction provides as follows:

"The right to use deadly force in self-defense is founded upon necessity and the natural law of self-preservation. If a party to a conflict is not the aggressor and does not provoke the conflict and, as a result of some overt act of another, has reasonable grounds to believe and does believe (1) that he [or a person who he is permitted by law to protect] is in imminent danger of death or serious bodily harm and (2) that the use of deadly force is necessary to counter the danger, he is entitled to use such force as he reasonably believes necessary under the circum-

stances to safeguard himself [or a person whom he is permitted by law to protect]. [He is not required to retreat to a place of safety. However, the reasonableness of retreat or standing one's ground and the fact of aggression by one party against the other are circumstances which you may consider in deciding whether the right of self-defense applies. In any event, retreat is not required if retreat will continue or increase the danger.]

"Generally the right to use deadly force in self-defense is not available to one who is the aggressor or provokes a conflict. However, if one is an aggressor or provokes a conflict thereafter withdraws from it in good faith and informs his adversary by words or actions that he desires to end the conflict and he is thereafter pursued, he is justified in using deadly force to safeguard himself from imminent danger of death or serious bodily harm.]"

The date on this instruction is 19 Oct. 1974 and was apparently in response to *State v. Haakenson*, 213 N.W.2d 394 (N.D. 1973) and also the new Criminal Code which was enacted by Ch. 116, S.L.1973. However, the new criminal code did not go into effect until 1 July 1975.

Granrud candidly points out that the instructions on self-defense were submitted to counsel in written form for exceptions prior to being read to the jury. The transcript reflects that counsel for Granrud did not object to the instructions on self-defense nor submit pattern jury instruction 1716 to the court.

■ If written instructions are submitted to counsel for exception before being read to the jury, counsel must then designate the parts or omissions he deems objectionable or else waive such exception. Rule 30(c), NDRCrimP; see also, *State v. Motsko*, 261 N.W.2d 860 (N.D.1977); *State v. Berger*, 148 N.W.2d 331 (N.D.1967). In situations in which no objection to alleged errors have been made at the trial court level, Rule 52(b), NDRCrimP, permits this Court to

consider whether or not the alleged errors are obvious errors or errors which affect substantial rights. See *State v. Bartkowski*, 290 N.W.2d 218 (N.D.1980); *State v. Schneider*, 270 N.W.2d 787 (N.D.1978).

Granrud asserts that because the *Haakenson* instruction is so essential to a fair trial when the question of self-defense is presented, the failure to give this instruction, whether requested or not, is obvious error. The particular part of the *Haakenson* instruction which Granrud contends should have been given refers to his right to use the amount of force that he (Granrud) reasonably believed necessary under the circumstances to safeguard himself.

█ At the close of the trial the court gave the jury the following instructions on defenses:

"The next several Instructions will cover defenses on which there is some evidence in the case for you to consider.

"In these next several Instructions on Defenses the word 'force' means physical action, threat, or menace against another.

### "Justification

"Justification or excuse is a defense except as otherwise expressly provided in the next several instructions.

"If a person is justified or excused in using force against another, but he recklessly injures another person, the justification afforded by these several Instructions are unavailable in a prosecution for such recklessness.

### "Self-defense

"A person is justified in using force upon another person to defend himself against danger of imminent unlawful bodily injury,

except that a person is not justified in using force if:

1. He intentionally provokes unlawful action by another person to cause bodily injury or death to such other person; *or*

2. He has entered into a mutual combat with another person or is the initial aggressor unless he is resisting force which is clearly excessive in the circumstances. A person's use of defensive force after he withdraws from an encounter and indicates to the other person that he has done so is justified if the latter nevertheless continues or menaces unlawful action.

### "Limits on use of force

"A person is not justified in using more force than is necessary and appropriate under the circumstances.

"The force exercised by a person in his own self-defense or by the person acting in the defense of another person, is not deemed excessive if it is no greater than that which the actor reasonably believed to be necessary to repel the offense at the time of the incident.

"The amount of force which may lawfully be used is not to be regulated by hindsight, but is measured by the reasonable beliefs of the person who apparently is being attacked at the time of the incident.

### "Excuse

"A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under the several preceding Instructions, even though his belief is mistaken.

"However, if his belief is recklessly held, it is not an excuse in a prosecution for an offense for which recklessness suffices to establish culpability."

In *State v. Reich*, 298 N.W.2d 468, 471 (N.D.1980), we said:

"In determining whether a jury instruction is misleading, the instruction as a whole must be considered. If, when considered as a whole, the instruction correctly advises the jury as to the law, it is sufficient although part of the instruction standing alone is insufficient or erroneous. *State v. Erickson*, 241 N.W.2d 854 (N.D.1976); *State v. Piper*, 261 N.W.2d 650 (N.D.1978)."

We believe that the instructions given by the trial court, as a whole, and in particular the portion dealing with limits on use of force, correctly and adequately apprise the jury of Granrud's right to use a deadly force in self-defense. Accordingly, we conclude that there was no error by the trial court in the instructions given.

█ The last issue raised by Granrud relates to the trial court's failure to instruct the jury on the legal definitions of "knowingly," "willfully," "intentionally," and "negligently."

Granrud was charged with manslaughter under § 12.1–16–02(1), NDCC, which provides as follows:

"A person is guilty of manslaughter, a class B felony, if he:

1. Recklessly causes the death of another human being . . ."

This section, in setting forth what constitutes manslaughter, uses the expression "recklessly causes the death" but it does not use the expressions "knowingly," "intentionally," or "negligently," nor are they components of the crime of manslaughter as defined by statute.

The trial court instructed the jury on the definition of "recklessly," but refused to instruct the jury as to "knowingly," "intentionally," and "negligently," as requested by Granrud's counsel. The jury was given the following definition of "recklessly":

"For purposes of criminal law, a person engages in conduct 'Recklessly'

if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks,

such disregard involving a gross deviation from acceptable standards of conduct."

Granrud points to the word "conscious" in this definition and asserts the definition of "conscious" may imply knowing or willing conduct. Thus Granrud asserts that the jury should have been instructed on the definitions of "knowingly" and "willfully." We disagree.

█ We believe that the instructions on "recklessly," as a whole, and in particular the phrases "conscious and clearly unjustifiable disregard" and "such disregard involving a gross deviation from acceptable standards of conduct," correctly advise the jury of the law on "recklessly" at issue in this case. Furthermore, we believe instructions on components not a part of the crime charged and at issue would be inapplicable and improper, *State v. Sheldon,* 301 N.W.2d 604 (N.D.1980);[1] *State v. Samuels,* 205 Neb. 585, 289 N.W.2d 183 (1980), and would be surplusage and tend to confuse[2] the jury. We conclude that the refusal of the trial court to give the requested instructions was not error.

For the reasons stated in the opinion, the decision of the district court is affirmed.

ERICKSTAD, C. J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.

---

1. We do note that a petition for a writ of certiorari in the United States Supreme Court has been filed in *State v. Sheldon.* As of this date the record does not reflect what, if any, action the Supreme Court has taken on the petition.

2. The terms "knowingly" and "willfully" are the equivalent of "intentionally" as that term is used in § 12.1–16–01, NDCC, defining murder. See also, § 12.1–02–02, NDCC. If the requested instruction were given it would elevate the culpability requirement of manslaughter to that of murder which would be confusing.

Section 12.1–16–02, NDCC, sets out the culpability requirement for manslaughter and, therefore, the rationale employed in *State v. Hanson,* 256 N.W.2d 364 (N.D. 1977), is not applicable. In *Hanson,* the court was involved with § 12.1–17–03, NDCC, entitled "Reckless endangerment" but the body of the law did not set out the culpability requirement and, therefore, the court, pursuant to § 12.1–02–02(2), applied the culpability requirement of "willfully." However, this is not the situation in this case.