STATE of North Dakota, Plaintiff and Appellee,

v.

Lillian M. DEMERY, Defendant and Appellant.

Cr. No. 866.

Supreme Court of North Dakota.

March 3, 1983.

Arne F. Boyum, Jr., State's Atty., Rolla, for plaintiff and appellee State of North Dakota.

Charles L. Chapman, of Chapman & Chapman, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Lillian M. Demery was found guilty by a Rolette County district court jury of committing the crime of robbery in violation of Section 12.1–22–01 of the North Dakota Century Code. She appealed to this court from the judgment of conviction entered by the district court, Rolette County, and presents the following issues for our consideration:

1. Was there sufficient evidence to support the jury's verdict?

2. Did the trial court err by not instructing the jury that Class C felony robbery is a lesser included offense of the major offense charged in the criminal information?

3. Did the trial court commit reversible error by instructing the jury that it could consider prior inconsistent statements of a witness as evidence of the truth of the facts of the case?

4. Did the trial court err in permitting the prosecution to use prior inconsistent statements of a witness in its questioning of the witness on cross-examination?

5. Did the trial court err in allowing the Rolette County sheriff to testify concerning statements made by Demery to him in an interview shortly after her arrest?

As will appear, we have decided these issues in the State's favor, and therefore Demery's conviction is affirmed.

I

Section 12.1–22–01(1), N.D.C.C., makes a person guilty of robbery if:

" . . . in the course of committing a theft, he inflicts or attempts to inflict bodily injury upon another, or threatens or men-

aces another with imminent bodily injury."

Except under various narrowly defined circumstances, robbery is a Class C felony. One of those circumstances which moves robbery out of the Class C felony category and into the Class B felony category is that the accused was aided in the robbery by an accomplice actually present. Sec. 12.1–22–01(2), N.D.C.C. This is the crime of which Demery was convicted.

■ A challenge to the sufficiency of the evidence to sustain a conviction requires us to make a comparatively limitative review of the evidence presented at trial. Although the jury is entitled to judge the credibility of witnesses and determine the relative weight to be given their testimony, we are not. Rather, we must look only to the evidence which favors the verdict and accept all the reasonable inferences therefrom to see if the trier of fact could reasonably conclude that the essential elements of the crime were established beyond a reasonable doubt. *State v. Morris,* 331 N.W.2d 48 (N.D.1983); *State v. Manke,* 328 N.W.2d 799 (N.D.1982); *State v. Cox,* 325 N.W.2d 181 (N.D.1982); *State v. Olson,* 290 N.W.2d 664 (N.D.1980).

The evidence which favors the jury's verdict shows that on November 10, 1981, at around noon, Demery and her daughter Lisa, who was then 15 years old, went to Henry Nelson's apartment and asked to borrow some money. Henry Nelson is a 77-year-old man who lives alone and has a heart condition. As a consequence of his poor health, Nelson had a tubular frame walker in his apartment which he used to support himself as he walked; he also had a wooden cane for the same purpose.

When asked to lend them money, Nelson, who knew Demery but did not know Lisa, responded that he needed what money he had to pay for his living expenses and could not afford to lend them anything. Demery

then said she had something she would sell to him for $10. He said he would not give her $10, to which she replied, "Give me 5 then," and he answered, "No."[1]

At that point, Nelson felt Lisa's hand going in his pants pocket. He told her to keep out of his pockets and, becoming suspicious of their intentions, he picked up his cane and ordered them out of his apartment. Suddenly Lisa grabbed the walker, which was standing on the floor in front of Nelson, and tried to hit him with it. Before she could, however, Nelson kicked it out of her hands. Demery quickly moved next to Nelson on the couch and, as he tried to call out for help, she covered his mouth with her hand. A struggle ensued in which Nelson felt Demery and Lisa searching his clothes in an obvious effort to find his wallet. After the struggle had ended and both assailants had left, Nelson noticed that the pocket in which he carried his wallet was ripped and the wallet was lying empty on the floor. Nelson guessed that it had contained about $50.[2]

A police officer arrived at Nelson's apartment a short time later in response to a phone call reporting the incident and found Nelson badly shaken. He had scratches and bruises on his chin, forehead, and right leg. When asked what had happened, Nelson answered that he had been attacked and robbed by two women whom he later identified as Demery and her daughter Lisa.

■ From these facts, we have no difficulty in concluding that (1) a rational trier of fact could find that Demery committed the crime of robbery with the aid of an accomplice actually present, and therefore (2) there was sufficient evidence to support the jury's verdict.

## II

Demery next argues that the trial court erred by its failure to instruct the jury that

1. During this exchange, Nelson was seated on one end of the couch in the living room; Lisa was on a chair next to him; and Demery was at a table not far from him.

2. Lisa testified at trial that it was she who took the money from Nelson's billfold. However, she also testified that she took only $34 from his billfold and that Nelson had lent them $20 before the struggle.

Class C felony robbery is a lesser included offense of Class B felony robbery. Demery's attorney did not specifically object to the instruction given, nor did he request an instruction of the sort her present attorney now argues should have been given.[3]

▆▆ Our interpretation of the requirements of Rule 30(c) of the North Dakota Rules of Criminal Procedure has made it clear that an attorney's failure to object at trial to instructions which he had an opportunity to examine before they were given to the jury operates as a waiver of his right on an appeal to object to the instructions. See *State v. Gates,* 325 N.W.2d 166 (N.D. 1982); *State v. Allery,* 322 N.W.2d 228 (N.D.1982); *State v. Granrud,* 301 N.W.2d 398 (N.D.1981). The issue, therefore, has not been properly preserved for our consideration, and consequently our inquiry is limited to the question whether or not the alleged error constitutes an obvious error which affects substantial rights of the defendant.[4] Rule 52(b), N.D.R.Crim.P.; *Allery, supra,* 322 N.W.2d at 232; *Granrud, supra,* 301 N.W.2d at 401–402, *cert. denied,* 454 U.S. 825, 102 S.Ct. 113, 70 L.Ed.2d 98 (1981); *State v. Reich,* 298 N.W.2d 468 (N.D.1980). We conclude it does not. See *State v. Motsko,* 261 N.W.2d 860 (N.D. 1977); *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

### III

Demery further maintains that the trial court incorrectly instructed the jury as to the limited purpose for which a witness's prior inconsistent statements could be considered.[5]

Part of Demery's theory of the case at trial, and on appeal, is that Lisa was the principal perpetrator of any crime which may have been committed in Nelson's apartment on November 10, 1981, and that, at worst, Demery was an accomplice to the crime.

Demery testified (1) that it was Lisa's idea to borrow money from Nelson, (2) that Lisa was already walking to Nelson's apartment when she returned to the pickup in which Demery was sitting to ask Demery to go with her, (3) that she initially resisted Lisa's request but then reluctantly agreed to go with her to Nelson's apartment, and (4) that she had left the apartment while Lisa and Nelson were still fighting and before any money was taken.

Lisa's testimony basically corroborated her mother's version of the events leading up to and including the struggle with Nelson. On cross-examination of Lisa, however, it was brought out that she had made statements to a police officer who was investigating the incident to the effect that it was her mother's idea to go to Nelson's apartment and also that it was her mother who got out of the pickup first and then told Lisa to go with her to Nelson's apartment. When confronted with these statements, Lisa admitted she had made them but claimed they were not true when made.

▆▆ It is the established rule in this State that a prior inconsistent statement may be used to impeach a witness, but may not be used substantively in a criminal case as direct evidence of the facts contained in the statement unless the prior statement

---

**3.** Demery's attorney on appeal is not the same attorney she had at trial.

**4.** Rule 52, N.D.R.Crim.P., states:

"(a) *Harmless Error.* Any error, irregularity or variance which does not affect substantial rights shall be disregarded.

"(b) *Obvious Error.* Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**5.** The court's instruction reads:

"INCONSISTENT STATEMENTS

"If the evidence of this case discloses that a witness made statements outside of court which contradict the witness' testimony given at this trial, then such contradictory statements, if knowingly made, may be considered by the Jury as evidence of the truth of the facts of the case, as well as for the purpose of judging the credibility—the believability—of the witness. It is the Jury's exclusive province to determine which is the truth, the witness' testimony at the trial or the witness' contradictory statement made outside of court."

was made under oath. See Rules 613 and 801(d)(1)(i), N.D.R.Ev.; *Allery, supra,* 322 N.W.2d at 232; *State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982); *State v. Hilling,* 219 N.W.2d 164 (N.D.1974). *But see State v. Igoe,* 206 N.W.2d 291 (N.D.1973), decided prior to the adoption of the North Dakota Rules of Evidence.

■ The court's instruction in this case concerning the permissible limits of the jury's use of a witness's prior inconsistent statements was wrong because it allowed the jury to consider such statements not only for the purpose of judging the credibility of the witness who created the inconsistency, but also as evidence of the truth of the prior inconsistent statements.

Although it was error for the trial judge to instruct the jury as he did in this regard, we note from an examination of the trial transcript that no objection was made to the instruction as given. Our task, once again, therefore is to determine whether or not the court's error affected substantial rights of the defendant requiring a new trial or other relief.[6] We conclude that it did not.

■ In deciding whether or not error is harmful, we will examine the entire record and evaluate the error in the context of the circumstances in which it was made to see if it had a significant impact upon the jury's verdict. See *Allery, supra,* 322 N.W.2d at 232; *United States v. Jackson,* 569 F.2d 1003 (7th Cir.1978), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978); *Isaac v. United States,* 431 F.2d 11 (9th Cir.1970). Of considerable consequence in our determination will be the relative strength of the case against the defendant. See *State v. Wetsch,* 304 N.W.2d 67 (N.D. 1981); 3A Wright, *Federal Practice and Procedure,* Criminal 2d, § 854 (1982), and cases cited therein.

■ Even if the jury did consider the prior statements which Lisa admittedly made, or allegedly made, as substantive evidence, none of them provided direct evidence of Demery's guilt. The prior statements did not increase or change the material evidence which the jury had before it regarding Demery's alleged robbery of Nelson. Nelson unambiguously testified on direct examination that Demery and her daughter Lisa attacked and robbed him.

We believe that Lisa's prior inconsistent statements could not have had a significant impact upon the jury's verdict, and accordingly we decide that no reversible error resulted from the trial court's giving an incorrect instruction which permitted the jury to consider the prior statements as substantive evidence.

IV

During cross-examination of Lisa with respect to her alleged prior inconsistent statements, the prosecution would repeat a prior statement and then ask Lisa if she had made it. Demery's attorney objected to this form of questioning, but the objection was overruled. Now Demery argues that the trial court erred in allowing the prosecution to repeat the substance of the prior statements while cross-examining Lisa.

■ Rule 613, N.D.R.Ev., permits the use of prior inconsistent statements to impeach a witness. There is no requirement in the rule that the prior statement be in evidence at the time the impeaching questions are asked. Cf., *Hilling, supra,* 219 N.W.2d at 170. On the contrary, one of the rule's expressed concerns is over the question of when and under what conditions

---

**6.** The Supreme Court in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), decided that a State statute which permitted substantive use of prior inconsistent statements in a criminal trial even though not made under oath was not unconstitutional. Hence, the trial court's erroneous instruction did not constitute error of a constitutional dimension, and therefore we have to decide only

that the court's error did not affect substantial rights of the defendant before we can regard the court's error as harmless; we do not have to find that the error was harmless beyond a reasonable doubt. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Explanatory Note, Rule 52, N.D.R. Crim.P.

extrinsic evidence of a prior inconsistent statement is admissible. The trial court did not err in overruling Demery's objection and in allowing the prosecution to question Lisa as it did.

■ If Demery's real argument is that the impeachment of Lisa was improper because the prosecution implied Lisa made statements which it was not prepared to prove, we do not agree. Our review of the record discloses a sound basis in fact for the prosecution's questions. First of all, Lisa acknowledged she had had a conversation with the police officer investigating Nelson's complaint. Secondly, Lisa admitted having made certain of the prior statements which the prosecution repeated to her and she stated that she had not told the officer the truth. Finally, the State sought to introduce Lisa's prior inconsistent statements through the testimony of the police officer who interviewed her, but the trial court sustained an objection to the proffered testimony on the ground that it would be hearsay.[7]

### V

■ On the morning following her arrest, Demery was interviewed by the Rolette County sheriff. A number of statements which Demery made during the interview were testified to by the sheriff at trial. Rule 801(d)(2), N.D.R.Ev., provides that a statement is not hearsay if it is offered against a party and is his own statement; therefore, the statements at issue were properly admissible in evidence absent a countervailing reason to exclude them. See *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *United States v. Rios Ruiz,* 579 F.2d 670 (1st Cir.1978).

Demery does not contend that the statements were inadmissible as admissions by a party-opponent. Her argument seems to be that the statements were obtained by illegal means.

Demery was brought to the Rolette County jail at 11 p.m. on the day of her arrest. Sometime that night she was taken to the local hospital for treatment of a stomach disorder. At the hospital, Demery complained of vomiting, diarrhea, and bloody stools. She was brought back to the jail the same night and once again in the morning she was taken to the hospital for further treatment. It was after Demery's morning treatment that she was interviewed by the sheriff.

From these facts, Demery concludes that she wasn't fully cognizant of her constitutional rights at the time of the interview, even though the sheriff testified, and Demery did not deny, that he had informed Demery of her constitutional rights before the interview and had obtained a waiver of rights from her.

Rule 12(b) of the North Dakota Rules of Criminal Procedure states, in pertinent part:

"Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following *must* be raised prior to trial:

"(1) . . .

"(2) . . .

"(3) Motions to suppress evidence on the ground that it was illegally obtained; . . ." [Emphasis added.]

There was no assertion by Demery either before trial or at the trial that her statements to the sheriff were made at a time when she was not fully apprised or aware of her constitutional rights.

■ A defendant's failure to raise a defense or objection, or make a request which must be raised or made prior to trial pursuant to Rule 12(b), N.D.R.Crim.P., acts as a waiver of the defense, objection, or request. Rule 12(f), N.D.R.Crim.P.; *State v. Hager,* 271 N.W.2d 476 (N.D.1978). Because Demery did not move to suppress at

---

7. Ordinarily, the use of a prior inconsistent statement to impeach a witness does not violate the hearsay rule because the statement is not offered to prove the truth of the matter asserted therein [see Rule 801(c), N.D.R.Ev.]; instead, it is offered to show that the witness has said something in the past which is inconsistent with his testimony at trial.

the required time so that the trial court could decide before the commencement of the trial on the merits whether or not Demery's statements were obtained by illegal means, we will not consider her argument now.[8]

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

8. Rule 12(f) of the Federal Rules of Criminal Procedure, which is essentially the same as our Rule 12(f), has been construed to bar appellate review of claims once waived unless it is shown that (1) there was just cause for the appellant's failure to raise the claim prior to trial as required by Rule 12(b), and (2) actual prejudice resulted from the claim which is now sought to be raised. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Davis v. United States,* 411 U.S. 233, 244, 93 S.Ct. 1577, 1583, 36 L.Ed.2d 216 (1973); *United States v. Davis,* 663 F.2d 824 (9th Cir.1981). Demery has not attempted to make either showing.