**The STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michael John JANDA, Defendant and Appellant.**

**Cr. No. 1165.**

Supreme Court of North Dakota.

Dec. 2, 1986.

Nicholas B. Hall, State's Atty., Grafton, for plaintiff and appellee.

Fleming & DuBois, Neil W. Fleming (argued), Cavalier, for defendant and appellant.

LEVINE, Justice.

Michael John Janda appeals from the judgment and sentence entered upon a jury verdict finding him guilty of gross sexual imposition in violation of § 12.1–20–03, N.D.C.C. We affirm.

Because no issue has been raised with regard to the sufficiency of the evidence to sustain the verdict, we need not present a detailed recitation of the facts. Between 8 and 9 a.m. on June 17, 1985, Janda engaged in a sexual act with the complainant in the complainant's home. The central dispute at trial was whether the complainant consented to the act.

Janda has raised the following issues: Whether or not error occurred in (1) allowing the man with whom the complainant lived to testify about statements made by the complainant concerning prior acts by Janda; (2) allowing a nurse to testify about details of the alleged assault told to her by the complainant; (3) admitting certain exhibits into evidence; (4) the sheriff's testifying that during questioning Janda said

that he wanted to speak to an attorney; (5) not giving Janda's requested instruction entitled "Testimony Viewed With Caution;" and (6) giving the State's requested instruction entitled "Corroboration Not Necessary."

## 1. Testimony about statements made by the complainant

■ Over Janda's objection, Richard [a pseudonym], with whom the complainant lived, testified that immediately after Janda left their house on the evening of June 16, the complainant told him that:

> "[E]arlier when she was in the kitchen he had come up to her and grabbed her and that he said some things to her—he wanted her or something like that—and she told me she didn't want him to come around any more and I agreed, we will never have him."

He also testified that the complainant was excited or distressed at that time. This testimony followed earlier testimony by the complainant about the same subject matter.

Janda asserts that the statement was hearsay and did not fall within Rule 801(d), N.D.R.Ev., because (1) he did not charge a recent fabrication, in that "the complaining witnesses' [sic] story did not change from the beginning of this case until trial;" (2) neither improper influence nor motive was at issue; and (3) the testimony was about prior acts of a "peripheral nature" unrelated to the "substance of the offense charged." We disagree.

Rule 801(d), N.D.R.Ev., provides:

> "(d) Statements Which are Not Hearsay. A statement is not hearsay if:

> "(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the

statement is ... (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, ..."

We hold that Richard's testimony was admissible under Rule 801(d)(1), N.D.R.Ev., because it rebutted an implied charge of recent fabrication,[1] as well as an implied charge of improper motive.

In cross-examining the complainant, Janda attempted to show that there was no force or less force involved in the sexual act charged than the complainant had implied in her testimony. Janda also implied that the complainant had an improper motive when his counsel asked the complainant if she was dependent on Richard for support and that if he "had heard or found out you and Mike [Janda] were fooling around, do you think he would have kicked you out of the house?"

If the complainant fabricated her story, her fabrications were "recent" in the sense that they were made after the events occurred. Simply because the complainant's "story did not change from the beginning of the case until trial" does not affect either the fabrication charged or its recentness. The fact that a witness' story never changed does not preclude the admission of a prior consistent statement under Rule 801(d)(1)(ii), N.D.R.Ev.

In *United States v. Provenzano*, 620 F.2d 985, 1001 (3rd Cir.1980), a prior consistent statement was admissible because it "was highly probative to rebut the defense claim, which at least was implied, that Picardo fabricated the whole conspiracy." Statements by the victim of a sexual assault were admissible under Ariz.R.Evid. 801(d)(1)(B) because:

---

1. "There exists a controversy among the circuits which focuses on whether, to be admissible under Rule 801(d)(1)(B) a prior consistent statement must be made prior to the existence of a motive to fabricate." 4 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 801(d)(1)(B)[01], pp. 801–154, 801–155 (1985). *Compare United States v. Quinto,* 582 F.2d 224 (2d Cir.1978), with *United States v. Williams,* 573 F.2d 284 (5th Cir.1978); and *United States v. Andrade,* 788 F.2d 521 (8th Cir.1986). We need not address this question, however, for in the instant case Janda has not asserted that the prior consistent statement was made after the existence of a supposed motive to fabricate.

"[T]hey were consistent with her testimony at the trial. They were offered to rebut an express and implied charge against her of improper motive—that she had consented to the sexual intercourse, later felt shame, and concocted the accusation of rape." *State v. Williams*, 131 Ariz. 211, 639 P.2d 1036, 1039 (1982). *See also United States v. Griggs*, 735 F.2d 1318, 1326 (11th Cir.1984) [declarant's prior statements admissible where "his veracity was under attack continuously throughout all phases of the proceedings since discrediting" the declarant was the primary goal of the defense]; *United States v. Stuart*, 718 F.2d 931 (9th Cir.1983) [statements made prior to a plea agreement admissible where cross-examination of the declarant called into question his motive in testifying].

In the instant case, the complainant testified in detail about what Janda did and said to her in her home on June 16 and what she reported to Richard. She was cross-examined [2] and an attempt was made to discredit her testimony about the force used in the sexual act charged and to show that she had an improper motive. The statement testified to by Richard was consistent with the complainant's prior testimony and corroborated her assertion that the sexual act occurred without her consent. The statement rebutted an implied charge in the cross-examination of the complainant of recent fabrication and improper motive. The complainant's veracity was under attack throughout the whole course of proceedings, since discrediting her story that the sexual act was accomplished by force without her consent was the primary goal of Janda's defense. The statement was relevant to the issue of consent and, therefore, was not of a "peripheral nature" and was related to the "substance of the offense charged." We thus conclude that the statement was not hearsay under Rule 801(d), N.D.R.Ev., because it was offered to rebut an implied charge of recent fabri-

cation and improper motive. *State v. Jenkins*, 326 N.W.2d 67, 71 (N.D.1982) [prior consistent statement was not hearsay and was admissible under Rule 801(d)(1), N.D. R.Ev., where the defendant's cross-examination "attempted to establish that the victim or her mother had made up a story concerning the charged crime"]. Our conclusion renders it unnecessary to address the State's contention that the statement was an excited utterance admissible under Rule 803(2), N.D.R.Ev., as well.

### 2. Nurse's Testimony

■ Janda asserts that a nurse on duty at the hospital where the complainant was brought for examination after the alleged assault should not have been allowed to testify that the complainant told her, among other things, that: (1) she had been attacked; (2) at her house; (3) her arms had been held down; (4) she had been told not to tell anyone; and (5) Janda did it. He asserts, among other things, that the statements did not constitute either an excited utterance (Rule 803(2), N.D.R.Ev.) because they were made more than one hour after the incident, or statements for purposes of medical diagnosis or treatment (Rule 803(4), N.D.R.Ev.) because they had "absolutely nothing to do with the diagnosis and treatment of [the complainant]."

The State argues that the statements were admissible either under Rule 803(4), N.D.R.Ev., or, relying on the nurse's observation that the complainant was "very pale and awfully frightened," under Rule 803(2), N.D.R.Ev.

Rule 803(4), N.D.R.Ev., provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

"*(4) Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical

---

2. Since Janda testified, it would have been better to elicit the testimony of the prior consistent statement after he had testified. However, even if premature, "premature admission into evi-

dence . . . is not sufficient basis for reversal." *United States v. Wiggins*, 530 F.2d 1018, 1022 (D.C.Cir.1976).

diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

Rule 803(4), N.D.R.Ev., was drawn, verbatim, from Rule 803(4), F.R.Ev., which "considerably liberalized prior practice pertaining to the admissibility of statements made for purposes of medical diagnosis or treatment." 4 J. Weinstein and M. Berger, *Weinstein's Evidence*, ¶ 803(4)[01], p. 803–143 (1985).

"All jurisdictions admit some statements made with a view to treatment as an exception to the hearsay rule, but considerable dissension exists about the scope of the exception. While some courts admit only statements of present symptoms, others have extended the rule to past symptoms, and a few have in addition admitted statements which describe the nature and cause of the injury insofar as they bear on treatment. *This last and most expansive approach is expressed in Rule 803(4)*." (Emphasis added.) *Id.* at 803–143.

The purpose of an examination of the kind involved here is not just the preservation of evidence, but diagnosis and treatment as well. In addition to diagnosing and treating such physical injuries as cuts or bruises, health care providers examining one claiming to be the victim of a sexual assault must diagnose whether or not the alleged victim has suffered psychological trauma and, if so, its nature and extent, and treat that as well. The intensity of psychological trauma suffered by the victim of a sexual assault may vary, depending upon such things as the location of the attack, the kind and degree of restraint of movement or force used, or the imposition of fear through an assailant's admonition to the victim not to tell anyone. Thus, such

matters are "reasonably pertinent to diagnosis and treatment" and statements about them are admissible under Rule 803(4), N.D.R.Ev. *See United States v. Iron Thunder*, 714 F.2d 765 (8th Cir.1983) [victim's nonidentifying statement that she had been raped admissible under Rule 803(4), F.R.Ev.]; *United States v. Iron Shell*, 633 F.2d 77, 82 (8th Cir.1980) [victim's nonidentifying statements to doctor that "she had been drug into the bushes, that her clothes, jeans and underwear, were removed and that the man had tried to force something into her vagina which hurt. She said she tried to scream but was unable because the man put his hand over her mouth and neck" admissible under Rule 803(4), F.R. Ev.]; *State v. Hebert*, 480 A.2d 742 (Me. 1984) [child's statement "that there had been sexual activity with an adult" admissible under M.R.Evid. 803(4) ]; *State v. Lee*, 404 A.2d 983, 984 n. 1 (Me.1979) ["medical testimony that the victim had been 'assaulted, stepped on in the stomach, [and] hit on back of [the] neck with [an] iron pipe'" admissible under Rule 803(4), M.R.Ev.]; *State v. Garza*, 337 N.W.2d 823 (S.D.1983) [children's statements describing the kinds of sexual acts practiced upon them by their stepfather admissible under SDCL 19–16–8 (Rule 803(4)) ].

Because in the instant case the identity of the person who engaged in a sexual act with the complainant was never an issue, we need not determine if her identification of Janda was admissible under Rule 803(4), N.D.R.Ev.[3] Our conclusion also renders unnecessary a determination of whether or not the statements were admissible as excited utterances under Rule 803(2), N.D. R.Ev.

### 3. Admission of Exhibits

■ Janda asserts that the trial court erred in admitting into evidence a hospital medical record, a Dew's Expert Rape Evi-

---

3. We note, however, that in child sexual abuse cases involving the possibility of psychological damage, the identity of the abuser has recently been held admissible as a statement for purposes of medical diagnosis or treatment. *See*

*United States v. Renville*, 779 F.2d 430 (8th Cir. 1985); *People v. Wilkins*, 134 Mich.App. 39, 349 N.W.2d 815 (1984); *Goldade v. State*, 674 P.2d 721 (Wyo.1983).

dence Kit report, and a photograph of the bedroom where the incident occurred.

The objections to the medical record are generally the same as those directed at the testimony of the nurse. For the reasons we have already stated with regard to the testimony of the nurse as to the complainant's statements, we find no error in admitting the exhibit.

Janda asserts that the Dew's Kit report should not have been admitted because it contains the complainant's name, address, telephone number, date of birth, information as to where the alleged assault occurred, description of the assailant, nature of the assault, victim's behavior after the assault, the assailant's behavior after the assault, and to whom and when the assault was reported, all of which are asserted to be unnecessary for diagnosis and treatment.[4]

While such identifying matters as the complainant's name, address, and telephone number may not have been necessary in this case for diagnosis and treatment, their presence on the exhibit clearly is not harmful or prejudicial, either. The remaining items in the report, (with the exception of the assailant's identity, which we have found need not be decided in this case) are, as we have already stated, "reasonably pertinent to diagnosis and treatment" and admissible under Rule 803(4), N.D.R.Ev.

Janda also asserts that the Dew's Kit report "contains the complaining witnesses version of the alleged assault and it is sent into the jury room with the jurors. The defendant, Mike Janda, was not able to have the jurors take with them any statements or information that he gave." Janda did not request that any part of the exhibit be deleted. The simple fact of the matter is that a properly admitted exhibit goes to the jury. Section 29-22-04, N.D.C.C.

Janda objected to the photograph of the bedroom which was taken about 10:30 on the morning of the incident by Chief Deputy Sheriff Lauer, because there was "no evidence this room is the same as it was at 8 or 9 in the morning."

There is evidence from which an inference could reasonably be drawn that the room was in essentially the same condition when the photograph was taken as it was when Janda entered it. The complainant said that after Janda left she got dressed and went to a nearby farm and told Richard what had happened. He called the police and took the complainant to the hospital. Lauer testified that Richard had not been in the room before Lauer took the photograph. We agree with the trial court's determination that whether or not the room had been disturbed was a question for the jury. The weight to be accorded to the photograph was for the jury to

---

**4.** No objection was made to the title of Exhibit No. 2, which indicates preparation for criminal prosecution and, according to Dr. Eelkema, "is a standardized rape form that we complete on these types of cases." The fact, however, that the form serves dual purposes of eliciting information for diagnosis and treatment and as evidence in a possible criminal prosecution does not render it inadmissible under Rule 803(4). *See United States v. Iron Thunder, supra,* 714 F.2d at 772-73 [Victim's statements admissible under 803(4), "[e]ven though Dr. Hess's examination and questioning of Traversie were pursuant to a standardized protocol designed in large measure to prepare for criminal prosecution...."]; *State v. Hebert, supra,* 480 A.2d at 748 ["The mere fact that the examination was potentially helpful to the prosecution's case does not detract from its medical nature."].

Janda also did not object to either Exhibit No. 1 or 2 on the basis that they were unnecessarily cumulative of the testimony of the complainant, the nurse, or the doctor. *See, e.g.,* 11 *Moore's Federal Practice* § 803(4)[5], p. VIII–102 (1985):

"A safeguard against potential abuse of Rule 803(4) is provided by the judge's discretion under Rule 403 to exclude evidence that is unnecessarily cumulative, or prejudicial. Thus, where other evidence exists in the record, (e.g., a patient's own testimony), the trial judge may determine that the physician's repetition of these statements is unnecessary."

We do not mean to imply, however, that Rule 803(4) was abused in this case. We only note that no request was made to exclude the exhibits under Rule 403, N.D.R.Ev. The only objection to the complainant's statement contained in Exhibit No. 2 was that it didn't have "anything to do with medical treatment," an objection we have already resolved.

determine. *State v. Kringstad,* 353 N.W.2d 302 (N.D.1984).

### 4. Sheriff's Testimony

Sheriff Pederson testified on direct examination about a conversation with Janda at the time of Janda's arrest. After several questions and answers, the following colloquy occurred:

"Q Did you ask him anything else?

"A ... I then asked, 'Will you explain what happened this morning,' to which he replied, 'I think I had better get an attorney before I say anything more.'

"MR. DU BOIS: I have an objection. I believe the last statement is improper reference to my client exercising his constitutional right.

"THE COURT: Absolutely.

"Members of the Jury, you are to ignore the last statement related to you by the Sheriff. Even though the Defendant may have made that remark, it is perfectly proper. The purpose of reading the Miranda warning is to inform him of his right to have an attorney, and the mere fact he is doing so should not be held against him."

Nothing more was said about the matter.

The Sheriff's testimony was an improper reference to Janda's invocation of his right to remain silent and to consult with an attorney.[5] *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (holding that a prosecutor's use of a defendant's post-arrest silence after receiving *Miranda* warnings to impeach the defendant's exculpatory story, told for the first time at trial, violates due process). *See also United States ex rel. Miller v. Greer,* 789 F.2d 438 (7th Cir.1986); *United States v. Remigio,* 767 F.2d 730 (10th Cir.1985); *State v. Schneider,* 270 N.W.2d 787 (N.D.1978). However, we deem the reference harmless beyond a reasonable doubt.

The trial court not only sustained the objection to Pederson's statement, but also promptly admonished the jury to disregard it. Generally, a jury is presumed to have followed a trial court's admonition. *See State v. Kringstad, supra.* Despite the trial court's prompt admonition to disregard Pederson's statement and despite the fact that nothing more was requested of the court, an error of constitutional dimension was placed before the jury through the prosecutor's elicitation of the statement. Because the trial court did all that was requested of it, promptly cautioned the jury to disregard the statement, and Janda did not move for a mistrial, the reversal now sought by Janda can only be granted on the basis of obvious error; we may notice obvious error on appeal under Rule 52, N.D.R.Crim.P., even if the error was not properly preserved. *See* opinion of Bell, J., concurring specially in *Odom v. United States,* 377 F.2d 853, 860–61 (5th Cir.1967). *See also United States v. Lacob,* 416 F.2d 756 (7th Cir.1969).

In *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709 (1967), the Supreme Court said:

"[T]here may be some constitutional errors which in the setting of a particular

---

5. Because we deem Pederson's statement to be a clearly improper reference to post-arrest silence, we need not determine if an expression of a desire to consult with an attorney should be distinguished from and treated differently than "silence." *Compare United States v. Johnson,* 558 F.2d 1225, 1228 (5th Cir.1977) ("We are of the opinion that the expressed desire to consult an attorney before explaining anything to customs officials is, purely and simply, an expressed desire to remain silent. To treat this utterance otherwise would, under the logic of *Doyle* and *Hale,* [*United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975)], improperly subject the defendant to penalty for exercising the right not to speak and the right to have an attorney present."), *and Wainwright v. Greenfield,* n. 13, —— U.S. ——, ——, 106 S.Ct. 634, 641, 88 L.Ed.2d 623, 632 (1986) ("[S]ilence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted."), *with* the opinion of Rehnquist, J., concurring in the result in *Wainwright v. Greenfield, supra,* —— U.S. at ——, 106 S.Ct. at 642, 88 L.Ed.2d at 633–34 ("Here the Court of Appeals assumed, without analysis, that respondent's conduct and statements following the warnings, such as his requests for a lawyer, should be treated the same as *silence.* I disagree.").

case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

Before a federal constitutional error can be held harmless, the court must find that it was harmless beyond a reasonable doubt. *Id.* Reviewing courts must ignore errors that are harmless, including most constitutional violations. *United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 106 (1983).

A prosecutor's use of a defendant's post-arrest silence is error for which harmless error analysis is appropriate. *See United States ex rel. Miller v. Greer, supra,* 789 F.2d at 442 ("The circuits universally apply this 'harmless beyond a reasonable doubt' standard to *Doyle* violations [*Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)]."); *Phelps v. Duckworth,* 772 F.2d 1410, 1413 (7th Cir.1985) ("Impermissible prosecutorial comment regarding post-arrest silence does not require reversal if the court determines it is harmless beyond a reasonable doubt."); *See also United States v. Remigio, supra; Morgan v. Hall,* 569 F.2d 1161 (1st Cir.1978).

The question arises whether the curative instruction given in this case renders the constitutional error harmless beyond a reasonable doubt. Even in cases involving nonconstitutional errors, curative instructions are not always sufficient to render the errors harmless. *See C. Wright, Federal Practice and Procedure: Criminal 2d* § 854 (1982). *See also State v. Schlittenhardt,* 147 N.W.2d 118 (N.D.1966); *Bischoff v. Koenig,* 100 N.W.2d 159 (N.D. 1959).

With regard to constitutional error, specifically a *Doyle* violation, the court said in *Morgan v. Hall, supra,* 569 F.2d at 1167–68:

"Other circuits, in ruling on the harmlessness of *Doyle* violations, have expressed serious reservations about the efficacy of curative instructions. Those cases that have held such errors to be harmless have emphasized not the presence or absence of curative instructions but the overwhelming evidence of guilt. In several cases the error was held harmless because the defendant did not present an exculpatory story that his silence would impeach. In no case has a prompt and forceful instruction alone been held sufficient to vitiate the use of post-arrest silence." (Numerous citations omitted.)

The consequences of a failure by the jury to follow the court's admonition are vital to the defendant. Because the error involved here is of constitutional dimension, we must analyze the effect of the error, despite curative instructions, by determining whether or not the error was harmless beyond a reasonable doubt. "Once the trial error has been identified as one of constitutional magnitude, then the *Chapman* standard is applied to determine whether the conviction must be reversed." *United States ex rel. Miller v. Greer, supra,* 789 F.2d at 443. We determine whether the error was harmless beyond a reasonable doubt by considering the probable effect of the error in light of all the evidence. *State v. Schneider, supra.*

The court in *Williams v. Zahradnick,* 632 F.2d 353, 361–62 (4th Cir.1980) set forth a nonexclusive list of factors to consider in determining whether a *Doyle* violation was harmless:

"1. The use to which the prosecution puts the postarrest silence.

"2. Who elected to pursue the line of questioning.

"3. The quantum of other evidence indicative of guilt.

"4. The intensity and frequency of the reference.

"5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions."

*See also State v. Schneider, supra.*

It was the prosecutor who elicited the reference to Janda's post-arrest silence. He elicited only the fact of silence and did not otherwise attempt to imply guilt from the silence. There was but a single reference to Janda's silence. The trial court

promptly admonished the jury to disregard the sheriff's statement and the court was not requested to grant a motion for mistrial. As to the "quantum of other evidence indicative of guilt," in addition to the testimony of the complainant and Richard's corroborating testimony, which we have already noted, bearing upon the matters of force and lack of consent, there was much other evidence from which the jury could reasonably infer that the sexual act charged was accomplished without the complainant's consent and with the imposition of force.

The examining physician testified to physical evidence of force and stated that in his opinion the complainant "was definitely sexually assaulted."

Richard testified that when the complainant told him of the incident "she was crying and her hands were shaking and she just looked awfully upset."

The nurse testified that when the complainant came to the hospital she was "very pale and awfully frightened and apprehensive, quiet."

Contrary to Janda's assertions about his and the complainant's conduct at Joe Campbell's house the day before the incident, Joe Campbell and Louis Kerian testified that they didn't observe any touching or interesting looks between Janda and the complainant.

The complainant testified that when the sexual act occurred Janda had "[b]ody odor, very bad odor, ... just a nauseating smell." A possible physical source of that odor was described in Chief Deputy Sheriff Lauer's testimony that when Janda was arrested:

"A. His blue jeans were soiled.

"Q. Soiled in what way?

"A. The crotch inside the crotch area and up the back there was a heavy brown stain.

"Q. Do you know what source that was from?

"A. I assume it was from not using toilet paper."

Janda testified that his "pants [were] as crusty as Mr. Lauer described them" because he "had a hemorrhoid problem."

While we do not wish to be understood as in any way condoning the prosecutor's elicitation of the statement, we nevertheless conclude, after reviewing the entire record of the case and considering the probable effect of Pederson's testimony in light of all the evidence, that Pederson's testimony was harmless beyond a reasonable doubt.[6]

### 5. "Testimony Viewed With Caution"

■ Janda asserts that the trial court erred in refusing to give the following requested instruction, drawn from a former pattern instruction, NDJI 1722:

### "TESTIMONY VIEWED WITH CAUTION

"The crime charged in the Information is a serious one. Generally speaking such a charge is easily made and difficult to disprove even if the Defendant is innocent. It is that character of crime that tends to create prejudice against the man who is charged with the offense. For these reasons it is your duty to weigh the testimony carefully, to scrutinize all of the circumstances in the light of reason and common sense, and then determine with deliberate judgment what is the right of the matter uninfluenced by the nature of the charge made against the Defendant. However, the fact that the

---

6. *But cf.* EC 7–13 (a public prosecutor's "duty is to seek justice, not merely to convict") and EC 7–25 ("a lawyer should not by subterfuge put before a jury matters which it cannot properly consider") of the North Dakota Code of Professional Responsibility; and Stevens, J., concurring in the judgment in *Rose v. Clark,* 478 U.S. ——, ——, 106 S.Ct. 3101, 3112, 92 L.Ed.2d 460, 477–78 (1986):

"An automatic application of harmless error review in case after case, and for error after error, can only encourage prosecutors to subordinate the interest in respecting the Constitution to the ever present and always powerful interest in obtaining a conviction in a particular case."

charge is one difficult to disprove should not deter you from returning a verdict of guilty if you are convinced by the evidence beyond a reasonable doubt that the Defendant is guilty as charged."

While acknowledging that such an instruction "has come under considerable fire from various courts and has been looked upon by some courts with disfavor," Janda has urged that we adopt the view expressed in `State v. Mackie`, 622 P.2d 673, 676 (Mont.1981), that such an instruction is applicable:

"[I]f the evidence presented at trial shows: (1) personal enmity existed between the victim and the defendant, and (2) corroborating evidence of the victim's account of the rape incident does not exist."

This court has previously stated that a complainant's testimony should not be viewed differently than that of other witnesses. *See State v. Gross*, 351 N.W.2d 428, 435 (N.D.1984), where, in upholding the trial court's denial of the defendant's request for an instruction that the jury "may view the complainant's testimony with caution," we stated:

"We do not believe that a complainant's testimony should be subject to a greater standard of scrutiny than the testimony of other witnesses. A jury logically considers possible bias in determining a complainant's credibility. If a cautionary instruction were allowed, a complainant would be treated differently from other witnesses and from other victims of crime. A cautionary instruction also improperly emphasizes the nature of the offense, not the nature of the evidence."

While the requested instruction did not include the sentence, "Therefore, the law requires that you examine the testimony of the female person named in the information with caution," contained in the jury instruction disapproved in *People v. Rincon—Pineda*, 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975), cited in *State v. Gross, supra*, the requested instruction does subject the complainant's testimony to a greater standard of scrutiny than that of

other witnesses and emphasizes the nature of the offense, rather than the nature of the evidence. We disapprove of the requested instruction and hold that the trial court did not err in refusing to give it.

Even if we were inclined to adopt the view expressed in *State v. Mackie, supra*, which we are not, we would find no error because at least one of the elements stated in *Mackie* is missing in the instant case. In our view, there is ample "corroborating evidence of the victim's account" (*State v. Mackie, supra*, 622 P.2d at 676) of the incident involved.

### 6. *"Corroboration Not Necessary"*

 Janda asserts that the trial court erred in instructing that:

"It is not essential to a conviction of a charge of gross sexual imposition that the testimony of the witness with whom sexual intercourse is alleged to have been committed be corroborated by other evidence. The testimony of the victim, without more, may be sufficient evidence to find the Defendant guilty of the charge, if so proved beyond a reasonable doubt."

Janda argues that the instruction calls attention to the victim's testimony and is an improper comment on the evidence. Janda did not object to use of the word "victim," rather than a less provocative term. The instruction is otherwise a correct statement of the law. *See, e.g., State v. Oasheim*, 353 N.W.2d 291 (N.D.1984), and cases cited therein.

A similar instruction, CALJIC 10.21, has withstood attack in California courts. CALJIC 10.21 states:

"It is not essential to a conviction of a charge of [rape] [unlawful sexual intercourse] that the testimony of the witness with whom sexual intercourse is alleged to have been committed be corroborated by other evidence."

As the court stated in *People v. Mayes*, 66 Cal. 597, 6 P. 691, 692 (1885) [overruled or disapproved on other grounds only in

*People v. Burton,* 55 Cal.2d 328, 11 Cal. Rptr. 65, 359 P.2d 433 (1961)]:

"[I]n cases of this character the prosecution must generally rely solely on the uncontradicted evidence of the prosecutrix, as, from the very nature of the offense, it frequently happens that there is no other witness. 'The real facts in a case of rape are commonly known only to the defendant and the complaining woman.... If she speaks the truth, no completely satisfactory confirmation of her testimony can often be had.' 2 Bish. Crim.Proc. § 962."

The court in *People v. McIntyre,* 115 Cal.App.3d 899, 176 Cal.Rptr. 3, 8 (1981) said:

"Permitting a jury to operate under the misconception corroboration is required would put the value of the victim's testimony on a level below that of the defendant's testimony, credibility aside, and that is not the law. We hold CALJIC 10.21 is proper in combination with CALJIC 2.27." [7]

The physician who examined the complainant testified that the fact that he "did not observe bruises or other harm to the body apart from the vaginal area," did not indicate to him that the complainant "was not resisting." In our view, while it may or may not be true that "[a]mong the corroborating circumstances almost universally present in cases of forcible rape are the signs and marks of the struggle upon the clothing, and bruises, scratches, and other marks of violence and resistance on the participants" [65 Am.Jur.2d, *Rape* § 98, 822–23 (1972)], it is not error to instruct as the trial court did in order to dispel any misconception on the part of jurors that such "signs and marks of the struggle" are necessary to convict.

However, just as the "Testimony Viewed With Caution" instruction requested by Janda unduly disparages a complainant's testimony, we believe that the "Corroboration Not Necessary" instruction given unduly emphasizes a complainant's testimony. While it is not error to instruct that corroboration is not necessary in order to dispel any misconception on the part of the jurors that corroboration is necessary to convict, the "Corroboration Not Necessary" instruction should have been accompanied by a witness-neutral cautionary instruction such as NDJI–CIVIL 1660 (formerly NDJI 1015), which provides:

"*Proof of Fact By Testimony of Single Witness*

"Any fact in dispute may be proved by the credible testimony of a single witness. However, before finding any fact to have been proved soley [sic] by the testimony of a single witness, you should carefully consider all of the testimony of that witness upon which proof of the fact depends."

That instruction is similar in import to CALJIC 2.27, which the court said in *People v. Rincon—Pineda, supra,* 123 Cal. Rptr. at 133, 538 P.2d at 261, "should be given in every criminal case in which no corroborating evidence is required." In *People v. Pringle,* 177 Cal.App.3d 785, 223 Cal.Rptr. 214, 217 (1986), the court held that the trial court erred in giving CALJIC 10.21 without also giving CALJIC 2.27, because:

"[T]he giving of CALJIC No. 10.21 in the absence of CALJIC No. 2.27 reasonably implies to lay jurors the testimony of a rape victim has a special status and is to be evaluated differently than that of other witnesses in the case—implying incorrectly that the testimony of other witnesses requires corroboration."

We do not hold in this case that an instruction such as NDJI–CIVIL 1660 "should be given in every criminal case in which no corroborating evidence is required." *People v. Rincon—Pineda, su-*

---

**7.** CALJIC 2.27 states:

"Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact [required to be established by the prosecution] to be proved solely by the testimony of such a single witness, you should carefully review all the testimony upon which the proof of such fact depends."

*pra,* 123 Cal.Rptr. at 133, 538 P.2d at 261. We hold only that when a "Corroboration Not Necessary" instruction is given, it should be accompanied by an instruction such as NDJI–CIVIL 1660 in order to guard against the possibility that jurors might infer that the complainant's testimony need not be corroborated, but a defendant's must be corroborated. While an instruction such as NDJI–CIVIL 1660 should have accompanied the "Corroboration Not Necessary" instruction, Janda did not request such an instruction or object to the omission of such an instruction and we do not deem the failure to give such an instruction in this case to constitute obvious error under Rule 52, N.D.R.Crim.P.

Under Rule 30(c), N.D.R.Crim.P., a failure to instruct is deemed excepted to unless the court has submitted proposed instructions to counsel and asked for exceptions to be noted. "Thereafter, only . . . omissions so designated shall be excepted to by the counsel designating the same." Rule 30(c), N.D.R.Crim.P. In cases of nonconstitutional error in instructing or failing to instruct where there was no objection, our task is to determine whether or not the "error constitutes an obvious error which affects substantial rights of the defendant" under Rule 52, N.D.R.Crim.P. *State v. Demery,* 331 N.W.2d 7, 11 (N.D.1983). In such cases we will determine whether the error had a significant impact upon the verdict, but we do not have to find that the error was harmless beyond a reasonable doubt. *State v. Demery, supra.*

In light of the relative strength of the case against Janda, we conclude from our examination of the entire record that the error in not giving an instruction such as NDJI–CIVIL 1660 did not have a significant impact upon the verdict. We note that of error not of constitutional dimension the United States Supreme Court has recently said that the "plain error doctrine" [8] should be used to correct only particularly egregious errors and should be used sparingly, when a miscarriage of justice would otherwise result. *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

*See also People v. Pringle, supra,* where the court determined that failure to accompany CALJIC 10.21 with CALJIC 2.27 was harmless error. "[T]he power to notice obvious error, . . . should be exercised only where a serious injustice has been done to the defendant." Explanatory Note, Rule 52, N.D.R.Crim.P. In light of the relative strength of the case against Janda, we do not believe that a miscarriage of justice has occurred or that Janda has been done a serious injustice. The error in failing to give an instruction such as NDJI–CIVIL 1660, therefore, was not obvious error requiring a new trial or other relief under Rule 52, N.D.R.Crim.P. The error was waived by Janda's failure to request such an instruction or to object to the omission of such an instruction. The error was not obvious error because Janda failed to request an appropriate instruction. *Vasichek v. Thorsen,* 271 N.W.2d 555 (N.D. 1978). The instruction given did not misdirect the jury. *See Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182 (N.D.1973).

Janda's final argument is aimed at establishing the prejudicial effect of the errors he has asserted occurred at trial. Because we have already determined that the only errors we have found were harmless, we need not further address this matter.

The judgment and sentence are affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

**8.** In Rule 52, N.D.R.Crim.P., "obvious" error has been substituted for the "plain" error used in

Rule 52, F.R.Crim.P.