McEvers, Justice.
[¶ 1] Richie Wilder appeals from a criminal judgment entered after a jury found him guilty of murder and from an order partially granting his motion to correct an illegal sentence. Wilder argues his conviction should be reversed and he is entitled to a new trial because his constitutional right to remain silent was violated by the State's improper comments during closing argument. He alternatively argues his sentence is illegal and should be amended because the district court erred by ordering *686 him to have no contact with his children until they turn 18 years old. We affirm the judgment as to Wilder's conviction, reverse the judgment as to his sentence, and remand with directions that the district court enter judgment consistent with this opinion.
I
[¶ 2] On November 13, 2015, Wilder's ex-wife, Angila Wilder, was stabbed to death in her bedroom. In December 2015, Wilder was charged with murder. A jury found Wilder guilty, and the district court sentenced him to life in prison without the possibility of parole. The court also ordered Wilder have no contact for the rest of his life with his two children with Angila Wilder.
[¶ 3] Wilder moved to correct the sentence, arguing it was an illegal sentence because it prohibited him from having contact with his children, violated his due process rights, and was not authorized by a sentencing statute. The district court partially granted Wilder's motion and amended the sentence to prohibit Wilder from having any contact with the children until they turn 18 years old. The court concluded it had both statutory and inherent authority to issue a no contact order to protect crime victims, and concluded the no contact order did not violate Wilder's due process rights.
II
[¶ 4] Wilder argues his conviction should be reversed and he is entitled to a new trial because the State's comments during closing argument violated his constitutional right to remain silent.
[¶ 5] A comment on the defendant's post-arrest silence is an improper comment on the right to remain silent in violation of the Fifth and Fourteenth Amendments of the United States Constitution. State v. Ebach , 1999 ND 5, ¶ 15, 589 N.W.2d 566. The prosecution may not impeach a defendant with his post-arrest silence if he was advised of his rights as required under Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because the Miranda warning carries an implicit "assurance that silence will carry no penalty" and it is "fundamentally unfair" to use post-warning silence. Doyle v. Ohio , 426 U.S. 610, 617-19, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). "When a defendant invokes his Fifth Amendment right against self-incrimination by choosing to remain silent, it is a violation of the defendant's due process rights to use his silence for impeachment." State v. Anderson , 2016 ND 28, ¶ 12, 875 N.W.2d 496.
[¶ 6] Wilder did not object to the State's comments or otherwise raise this issue before the district court. "Improper comment about a defendant's invocation of the right to remain silent is a constitutional error that may be reviewed on appeal even though not raised at trial." State v. Gaede , 2007 ND 125, ¶ 18, 736 N.W.2d 418.
[¶ 7] During closing arguments, the State summarized evidence about different stories Wilder told about what happened the night Angila Wilder was killed. The State explained Wilder changed his story multiple times, including telling his jail cell mate, Paul Madriles, he was "100% sure" a "husky Native American" brought into the jail was the person who killed Angila Wilder. The State said:
So information keeps trickling in, and [police] follow up on it. None of it causes them to steer this investigation in a different direction. There was no hit man, there was no black guy with a gun. There is a husky Native American, but Richie Wilder never reported that to law enforcement. And then a year later Jeremiah Tallman comes forward. Richie *687 Wilder had confessed his involvement.
During rebuttal, the State further argued:
[Wilder's attorney] says he didn't know who this person was, the stranger in Angila's bedroom that killed her. Took him out of the house at knife point. He told Paul Madriles who it was, he was 100% sure it was that husky Native American that was brought into the jail in February. Why didn't he report that to law enforcement? What didn't he report to law enforcement that somebody else was there? He tells the Chris Jackson story, they prove him wrong on that. Why didn't he tell law enforcement about the guy coming out of the closet with a knife? Because it didn't happen. There was no guy with a knife. The only guy with a knife was Richie Wilder.
[¶ 8] Wilder spoke to police at least twice after Angila Wilder was murdered. The first time was the day of the murder and officers advised Wilder of his Miranda rights before they spoke to him. The second occurred after Wilder had been arrested and charged with murder, and the officers again advised Wilder of his Miranda rights before speaking with him. During closing argument, the State questioned why Wilder did not tell police about the information he told his jail cell mate. The State then speculated that Wilder did not tell police because he committed the act himself. The State's argument can be construed as a comment on Wilder's post- Miranda , post-arrest silence. The State asked the jury to infer that Wilder did not tell police about the "guy with a knife" because Wilder was guilty and he would have told police if he had been innocent. The State improperly commented on Wilder's post-arrest silence. See City of Williston v. Hegstad , 1997 ND 56, ¶ 10, 562 N.W.2d 91 (holding State's reference to defendant's failure to come forward with his version of events at any time before the trial was improper); see also Hassine v. Zimmerman , 160 F.3d 941, 948 (3d Cir. 1998) (holding prosecutor's questions about defendant sitting in prison for seven months remaining silent about the crime was improper); United States v. Boyd , 620 F.2d 129, 131 (6th Cir. 1980) (holding prosecutor's comment questioning why defendant did not tell police they had the wrong person was improper).
[¶ 9] Because the State's comments were improper, harmless error analysis is appropriate and the State must prove beyond a reasonable doubt that the comments did not contribute to the verdict. See Anderson , 2016 ND 28, ¶ 14, 875 N.W.2d 496. This Court has said the following non-exclusive list of factors should be considered in deciding whether an improper comment was harmless error:
1. The use to which the prosecution puts the post arrest silence.
2. Who elected to pursue the line of questioning.
3. The quantum of other evidence indicative of guilt.
4. The intensity and frequency of the reference.
5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.
Id.
[¶ 10] Wilder argued the State made the two improper comments during its closing and rebuttal arguments. Although he alleged during oral argument that there were other improper comments at other times during the trial, we generally do not consider arguments raised for the first time at oral argument on appeal. See Rath v. Rath , 2017 ND 138, ¶ 16, 895 N.W.2d 315. Therefore, our analysis is limited to the improper comments made during the State's closing arguments.
*688 [¶ 11] Wilder did not object to the State's argument or raise this issue with the district court during the trial when the court could have given the jury a curative instruction. Generally, a jury is presumed to follow curative instructions. State v. Gibbs , 2009 ND 44, ¶ 21, 763 N.W.2d 430. This Court has held prejudice from the State's argument can be minimized by giving a curative jury instruction. State v. Chacano , 2013 ND 8, ¶ 25, 826 N.W.2d 294 ; but see Anderson , 2016 ND 28, ¶ 15, 875 N.W.2d 496 (questioning whether a curative instruction is helpful in these cases). Wilder also did not move for a mistrial. The court did not have an opportunity to give a curative instruction or grant a motion for a mistrial because this issue was raised for the first time on appeal.
[¶ 12] Moreover, there was considerable evidence of Wilder's guilt and he does not challenge the sufficiency of the evidence against him on appeal. Wilder had a scratch on his face when he spoke with police on the day of the murder, DNA evidence under Angila Wilder's fingernails was collected and tested, Y-chromosomal DNA analysis was conducted on the fingernail evidence, the Y-chromosome profile from the fingernail evidence matched Wilder's Y-chromosome profile, and Wilder and his paternally related male relatives could not be excluded as contributors. Evidence established DNA from blood found in Wilder's wife's vehicle matched Angila Wilder's DNA. Wilder's recorded interviews with police were admitted into evidence and played for the jury. During the interviews, Wilder told police his relationship with Angila Wilder was contentious, she often called social services and reported him, and they only communicated by email. Wilder initially told police he did not know anything about the murder but later told them he was at Angila Wilder's house when she was killed. Wilder told police Chris Jackson, Angila Wilder's boyfriend, approached him about a plan that would allow each of them to get custody of their children from Angila Wilder. Wilder claimed he went to Angila Wilder's home with Jackson to catch her cheating on Jackson, but when they arrived Jackson stabbed Angila Wilder. Wilder claimed Angila Wilder scratched his face when he checked her pulse and he left the room after Jackson started stabbing her again. Wilder admitted to police that he was at Angila Wilder's home when she was killed. Police obtained video evidence Angila Wilder's boyfriend was at work during the time of the murder. Jeremiah Tallman testified that he spent time with Wilder in jail, Wilder told him he murdered Angila Wilder, and Wilder told him details about the crime.
[¶ 13] The State improperly used Wilder's post-arrest silence in closing arguments. While the references were few and brief, these factors weigh against the State. However, after considering the entire record and the relevant factors, particularly the quantum of other evidence indicative of guilt, we conclude any error was harmless beyond a reasonable doubt and does not require reversal of Wilder's conviction.
III
[¶ 14] Wilder argues the provision of his sentence prohibiting him from having any contact with his two children until they turn 18 years old is an illegal sentence. Wilder contends the district court lacked statutory authority to order no contact with his children as part of his sentence.
[¶ 15] A sentence is illegal if it is in excess of a statutory provision or in some other way contrary to an applicable *689 statute. State v. Booth , 2015 ND 59, ¶ 4, 861 N.W.2d 160. "This Court will vacate a district court's sentencing decision only if the court acted outside the limits prescribed by statute or substantially relied on an impermissible factor in determining the severity of the sentence." State v. Klein , 2014 ND 166, ¶ 7, 851 N.W.2d 159.
[¶ 16] Wilder moved to correct his sentence under N.D.R.Crim.P. 35(a)(1), arguing the no contact order was illegal because it was not authorized by a sentencing statute and it violates his due process rights. The district court partially granted Wilder's motion and reduced the no-contact provision from a lifetime duration to no contact until the children turn 18. The court noted it has statutory authority to issue a no contact order before trial under N.D.C.C. § 12.1-31.2-02 and to impose no contact provisions as a condition of probation, citing N.D.C.C. § 12.1-32-07(2) and State v. Aune , 2002 ND 176, 653 N.W.2d 53. The court stated, "It would be incongruous to say that the Court has the authority at the front and to impose a no contact order as a condition of bond, and at the backend as a condition of probation, but has no authority to do the same thing in the middle while a violent felon is serving a sentence." The court ruled it has inherent authority to protect children and constitutional and statutory authority under N.D. Const. art. VI, § 7 and N.D.C.C. § 27-05-06 to issue all writs necessary to a full and complete jurisdiction of the court, which "should extend the issuance of a no contact order for the protection of child victims from violent felons while that felon is serving sentence." The court also said N.D. Const. art. I, § 25 gives protections to victims, including the right to have no contact with the perpetrator. The court said the constitutional provision combined with the court's statutory and inherent authority to order no contact makes North Dakota different from other states that require a statute to authorize the imposition of a no contact order as part of a criminal sentence. The court concluded its action was "a de facto invocation of [ N.D. Const. art. I, § 25 ] protection for the benefit of these children."
[¶ 17] Appellate review of a criminal sentence is generally limited to determining whether the district court acted within the statutory sentencing limits or substantially relied upon an impermissible factor. State v. Corman , 2009 ND 85, ¶ 15, 765 N.W.2d 530. Statutory interpretation is a question of law, which is fully reviewable on appeal. Id. Penal statutes are generally strictly construed against the government. Id.
[¶ 18] Wilder was convicted of murder under N.D.C.C. § 12.1-16-01(1), a class AA felony, and was sentenced to life in prison without the possibility of parole. Section 12.1-32-01, N.D.C.C., authorizes a district court to sentence an individual convicted of a class AA felony to a maximum sentence of life imprisonment without parole. Wilder's sentence of life in prison without parole was within the limits prescribed by statute and is not illegal.
[¶ 19] However, Wilder's sentence also included a provision ordering that he have no contact with two of his children until the children turn 18 years old. Section 12.1-32-02, N.D.C.C., authorizes the court to sentence a defendant to one or more of a number of alternatives, including a term of imprisonment, probation, fines, restitution, and sex offender treatment, but it does not authorize a court to order no contact as part of a *690 prison sentence. The State has not cited and we are not aware of any statutory provisions that explicitly authorize a sentencing court to order no contact during a term of imprisonment as part of the offender's sentence. "Statutes should be read in relation to other statutes involving the same or similar subject matter in an attempt to discern legislative intent." Kroschel v. Levi , 2015 ND 185, ¶ 18, 866 N.W.2d 109. Section 12.1-31.2-02, N.D.C.C., authorizes the court to order no contact when a defendant is released from custody before arraignment or trial. Section 12.1-32-07(2), N.D.C.C., authorizes the court to order conditions of probation and states, "The conditions of probation must be such as the court in its discretion deems reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist the defendant to do so." This Court has held a district court may order a probation condition prohibiting the defendant from entering a specific location when the condition would assist the defendant in leading a law-abiding life. See Aune , 2002 ND 176, ¶ 10, 653 N.W.2d 53 ; State v. Sahr , 470 N.W.2d 185, 194 (N.D. 1991). The legislature authorized the court to order no contact in other similar situations, but did not authorize the court to order no contact as part of a sentence of imprisonment. Sentencing statutes are "strictly construed against the government or parties seeking to impose them and in favor of persons on whom they are sought to be imposed." State v. Sheldon , 312 N.W.2d 367, 369 (N.D. 1981). In the absence of statutory language authorizing a court to order no contact as part of a prison sentence, we conclude the legislature did not intend to give the court that authority.
[¶ 20] This is consistent with courts' decisions in other jurisdictions, which have held that a sentencing court cannot order no contact as part of an executed sentence in the absence of a specific statutory provision explicitly allowing it. See, e.g. , Laux v. State , 821 N.E.2d 816, 818-19 (Ind. 2005) (holding the court could not order no contact with victim's family when it sentenced defendant to life in prison because no contact order was not authorized by statute, legislature provided other ways to protect family); State v. Post , 279 Kan. 664, 112 P.3d 116, 120 (2005) (holding no contact order was an illegal sentence because it did not conform to statutory sentencing provisions, statutes only allowed the court to impose conditions when a defendant is sentenced to probation or community corrections); State v. Pugh , 753 N.W.2d 308, 311 (Minn. Ct. App. 2008) (holding statutes did not authorize the court to issue a no-contact order as part of an executed sentence).
[¶ 21] Our sentencing statutes do not authorize a sentencing court to order no contact as part of a prison sentence; however, the district court also concluded it had authority to protect victims and order no contact as part of Wilder's prison sentence under N.D. Const. art. I, § 25. Article I, § 25, N.D. Const., is a new constitutional provision, which was passed by initiated measure in November 2016. Article I, § 25(1), N.D. Const., contains victim's rights provisions, including:
b. The right to be free from intimidation, harassment, and abuse.
c. The right to be reasonably protected from the accused and any person acting on behalf of the accused.
[¶ 22] Wilder argues N.D. Const. art. I, § 25 does not apply in this case because the children are not "victims" for purposes of the law. The constitutional provision defines a "victim" as:
*691 [A] person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act or against whom the crime or delinquent act is committed. If a victim is deceased, incompetent, incapacitated, or a minor, the victim's spouse, parent, grandparent, child, sibling, grandchild, or guardian, and any person with a relationship to the victim that is substantially similar to a listed relationship, may also exercise these rights.
N.D. Const. art. I, § 25 (4). Arguably, the children of a murder victim may meet this definition. Regardless, for a victim's rights under the constitution to be invoked the victim or representative of the victim must request enforcement. Article I, § 25(2), N.D. Const., states:
The victim, the retained attorney of the victim, a lawful representative of the victim, or the attorney for the government upon request of the victim may assert and seek enforcement of the rights enumerated in this section and any other right afforded to a victim by law in any trial or appellate court ... as a matter of right. The court ... shall act promptly on such a request, ensuring that no right is deprived without due process of law, and affording a remedy by due course of law for the violation of any right.
There was no request for the district court to order no contact in this case. The court decided to order no contact on its own, without a request from the children, their representative, or the State. Because there was no request from the children or their representative for the no contact order, we conclude the constitutional provisions for victims do not apply and we will not address whether a sentencing court is authorized by N.D. Const. art. I, § 25 to order no contact as part of a prison sentence.
[¶ 23] The district court said, "If the Court has erred by trying to shield these children from further contact with the cold-blooded killer of their mother, so be it. It is a mistake the Court will make every time in order to protect children." The legislature may, as a valid exercise of its police power, set sentencing limitations for violations of criminal statutes. See State v. Clinkscales , 536 N.W.2d 661, 666 (N.D. 1995). The district court has the power and duty to impose a sentence within the limits prescribed by statute. State v. Brandon , 413 N.W.2d 340, 341 (N.D. 1987). It does not have discretion to impose a sentence outside the limits set by statute. See Clinkscales, at 666. Although the district court may desire to order a sentence outside the statutory sentencing limits for reasons it believes are valid and justify the sentence, it does not have the power to impose a sentence that exceeds the statutory sentencing limitations. We have said, "The function of the courts is to interpret the law, not to legislate, 'regardless of how much we might desire to do so or how worthy an argument.' " Olson v. Workforce Safety & Ins. , 2008 ND 59, ¶ 23, 747 N.W.2d 71 (quoting CybrCollect, Inc. v. N.D. Dep't of Fin. Insts. , 2005 ND 146, ¶ 23, 703 N.W.2d 285 ). The court did not have authority to order no contact as part of Wilder's sentence of life in prison.
[¶ 24] The sentencing statutes did not authorize the district court to order no contact as part of Wilder's prison sentence. Because there was no request for enforcement of the children's rights, the court did not have authority under N.D. Const. art. I, § 25 to order no contact as part of the sentence. The court acted outside the limits *692 prescribed by statute. There are other laws that can be applied to accomplish the same result as the district court was trying to accomplish.
[¶ 25] We conclude the no contact order is an illegal sentence. We reverse the district court's order partially granting Wilder's motion to correct his sentence and the judgment as to Wilder's sentence, and remand for the court to correct the judgment.
IV
[¶ 26] We do not address the remaining issues or arguments because they are unnecessary to the decision. We affirm the judgment as to Wilder's conviction, reverse that portion of the order denying correction of sentence and the judgment as to his sentence, and remand with directions that the district court enter judgment in accordance with this opinion.
[¶ 27] Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
I concur in the result. Gerald W. VandeWalle, C.J.