Corrected Opinion Filed 8/14/24 by Clerk of the Supreme Court

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 110

State of North Dakota,

Plaintiff and Appellee

v.

Howard Anthony Studhorse,

Defendant and Appellant

## No. 20230247

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Donovan J. Foughty, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justice Bahr joined. Justice McEvers filed an opinion concurring specially, in which Justice Crothers joined.

Beau M. Cummings, State's Attorney, Devils Lake, N.D., for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]    Howard Studhorse appeals from a criminal judgment entered following a jury trial. On appeal, he argues the district court misapplied N.D.R.Ev. 603; he was convicted of a non-cognizable offense on counts IV and V; the State committed obvious error by eliciting testimony on his right to remain silent; the jury instructions were improper, resulting in obvious error because of a lack of unanimity among the jury; his convictions on counts II and V created a double jeopardy violation; and the evidence was insufficient to support the convictions on counts I and II. We reverse the convictions on counts I and V and affirm the remainder of the judgment.

I

[¶2]    The State charged Studhorse with five counts of gross sexual imposition and one count of contributing to the deprivation or delinquency of minors. At trial, the State provided testimony from ten witnesses, which included the three victims, identified here as Jane Doe 1, Jane Doe 2, and Jane Doe 3, a forensic interviewer, a school counselor, police detectives, and a case worker. After the State rested, Studhorse moved for acquittal under N.D.R.Crim.P. 29 on the five counts of gross sexual imposition. The court denied those motions. The jury returned a verdict of guilty on all six charges. Studhorse appeals.

II

[¶3]    Studhorse argues the district court misapplied N.D.R.Ev. 603 and denied him his right to due process and a fair trial because the oath or affirmation given to Jane Doe 3 did not require the witness to tell the truth.

[¶4]    Studhorse concedes he did not object to the affirmation given by the Court. "When an issue has not been properly preserved, we review only for obvious error." *State v. Hamilton*, 2023 ND 233, ¶ 10, 999 N.W.2d 214.

> To establish obvious error under N.D.R.Crim.P. 52(b), the defendant has the burden to show (1) error, (2) that is plain, and (3) that affects substantial rights. We exercise our power to notice obvious error cautiously, and only in exceptional circumstances where the accused has suffered serious injustice. In determining whether there has been obvious error, we examine the entire record and the probable effect of the alleged error in light of all the evidence.

*State v. Dahl*, 2022 ND 212, ¶ 12, 982 N.W.2d 580 (quoting *State v. Yineman*, 2002 ND 145, ¶ 22, 651 N.W.2d 648).

[¶5]    Rule 603, N.D.R.Ev., requires "[b]efore testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience." We have stated, "While [N.D.R.Ev. 603] was not literally followed, we are not persuaded the degree of omission for a child compels a new trial or a different result." *Ryan v. Flemming*, 533 N.W.2d 920, 922 (N.D. 1995). In *Ryan*, a ten-year-old was not placed under oath, but the district court did instruct him his answers would be important. *Id*. We held that was sufficient under the rule because the child's credibility was for the district court to weigh, and if a party believes greater stimulus is required to encourage truthfulness, that party must object to the procedure. *Id*.

[¶6]    The district court emphasized the importance of telling the truth.

> THE COURT: And [Jane Doe 3], do you know what it means when somebody tells the truth and when somebody lies? Do you know the meaning of those two things?
> THE WITNESS: Yes.
> THE COURT: Okay. If I said I'm wearing a pink robe, is that the truth or a lie?
> THE WITNESS: A lie.
> THE COURT: Okay. And do you understand that it's important for, when somebody asks you a question, that you do the best you can to tell the truth?
> THE WITNESS: Yes.
> THE COURT: And at this point, do you promise that you will try to the best of your ability to tell the truth if somebody asks you a question?
> THE WITNESS: Yes.
> THE COURT: Well then, at this point I am going to allow you to testify, which means Mr. Cummings is going to ask you some questions, and then you just do the best you can. Will you promise to do that?
> THE WITNESS: Yes.

[¶7]    The State also emphasized telling the truth.

> [THE STATE:] Last rule is, everything we talk about has to be true or real. Do you understand what that means?
> [THE WITNESS] Yes.

As in *Ryan*, the child did not provide an oath or affirmation, but the court and State instructed the child on the importance of the truth. The district court's discussion with Jane

Doe 3 impressed upon the witness that she had a duty to tell the truth, which complied with N.D.R.Ev. 603. Because we approved of a similar procedure in *Ryan*, this is not obvious error.

III

[¶8]     Studhorse argues the State improperly elicited testimony about his silence because the State used the testimony to imply his guilt.

[¶9]     "[An] [i]mproper comment about a defendant's invocation of the right to remain silent is a constitutional error that may be reviewed on appeal even though not raised at trial." *State v. Gaede*, 2007 ND 125, ¶ 18, 736 N.W.2d 418 (citing *State v. Schneider*, 270 N.W.2d 787, 792 (N.D. 1978), where we applied obvious error analysis in that circumstance). If an improper comment on a defendant's post-arrest silence is presented to the jury, this Court reviews for harmless error. *Id.*

[¶10]   "A comment on the defendant's post-arrest silence is an improper comment on the right to remain silent in violation of the Fifth and Fourteenth Amendments of the United States Constitution." *State v. Wilder*, 2018 ND 93, ¶ 5, 909 N.W.2d 684. "[B]ecause the *Miranda* warning carries an implicit 'assurance that silence will carry no penalty,'" a defendant's invocation of his rights to counsel and to remain silent to end an interrogation cannot be used to infer guilt at trial. *Id.* (quoting *Doyle v. Ohio*, 426 U.S. 610, 617-19 (1976)). Further, the United States Supreme Court extended the prohibition against commenting on a defendant's post-*Miranda* silence to a defendant's post-*Miranda* invocation of the right to counsel. *Wainwright v. Greenfield*, 474 U.S. 284, 295 n.13 (1986) ("With respect to post-*Miranda* warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted.").

[¶11]   During direct examination in the State's case-in-chief, Detective Anthony testified:

> Q. Approximately how long did your interview go on?
> A. I believe it was about an hour and ten minutes.
> Q. Why was the interview discontinued?
> A. After a certain period of time Howard wished to refuse to speak to me until he was able to consult with a lawyer.
> Q. Did you stop the interview?
> A. Yes, I did.
> Q. And did you ever attempt to reinterview the Defendant after that?

3

A. No, I did not.

Q Why not?

A. Because his right to counsel, and he never wanted to speak without — or with the lawyer. And I think he's gone through a couple. So we were never able to work with that.

[¶12] The State argues the line of questioning did not violate *Doyle*, and in the alternative, any error was harmless. For purposes of our analysis here, we assume without deciding whether the State's line of questioning improperly elicited comments on Studhorse's post-*Miranda* silence. *See Wickham v. State*, 2022 ND 116, ¶ 8, 974 N.W.2d 646. We consider the following non-exclusive factors when determining whether an improper comment was harmless:

1. The use to which the prosecution puts the post arrest silence.
2. Who elected to pursue the line of questioning.
3. The quantum of other evidence indicative of guilt.
4. The intensity and frequency of the reference.
5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

*State v. Wilder*, 2018 ND 93, ¶ 9, 909 N.W.2d 684. Assuming the State's comments were improper, the State must prove beyond a reasonable doubt that the comments did not contribute to the verdict and the error was harmless. *See State v. Anderson*, 2016 ND 28, ¶ 14, 875 N.W.2d 496.

[¶13] Here, the State's use of Studhorse's silence may be interpreted in two ways. Studhorse decided to be silent and ceased to be cooperative with police, or he was willing to talk but once he invoked his right to counsel, the police discontinued all contact with Studhorse. This factor is neutral. The prosecution, rather than the defense, elected to pursue the line of questioning. This factor weighs against the State. The quantum of the evidence for each charge is substantial. The testimony of the victims and the officers unrelated to Studhorse's invocation of his right to counsel is indicative of guilt. This factor favors the State. The State's reference to Studhorse's invocation of his right to counsel was brief and was not commented on by the State during its opening or closing arguments. This factor favors the State. Last, the district court did not have an opportunity to grant a motion for mistrial or give a curative instruction because there was no objection at trial.

[¶14] After considering these factors and the entire record, we conclude any error here was harmless and does not require reversal of Studhorse's convictions.

[¶15] Studhorse further argues the State's questions forced him to address the comments. On cross-examination of the detective, Studhorse's counsel asked:

> Q. And why do you mirandize people?
> A Just to inform them that they don't have to speak with law enforcement, that they have the right to an attorney while speaking with us.
> Q. They have an absolute right to an attorney; correct?
> A. That is correct.
> Q. And if they don't choose to speak with law enforcement, that's an exercise of that right; correct?
> A. That is correct.
> Q. And Mr. Studhorse exercised that right?
> A. At the very end of our interview; yes.

[¶16] Then his counsel in closing arguments stated:

> Now, Detective Anthony seemed to want to make a big deal out of the fact that he invoked his right to an attorney. For what it's worth, I would submit to you that it's not unreasonable for anybody who is being questioned in regard to this type of an offense to say, "Hey, I want to talk to a lawyer." Nothing wrong with that. You can't draw any inferences, or you shouldn't draw any inferences from it.

[¶17] Compared to the defense, the State's comments were brief and not relied on in argument. Without objection to the initial reference and without seeking the court's assistance through further limiting instructions, all further references resulted from defense questions intended to raise the topic. Any comments on Studhorse's invocation or exercise of his rights to counsel and to silence were invited, and he may not obtain relief on appeal for errors he invited. *See State v. Hill*, 1999 ND 26, ¶ 21, 590 N.W.2d 187 (concluding defense counsel's questions that led to indirect testimony on the defendant's silence was invited and not reversible error).

IV

[¶18] Studhorse argues he was convicted of non-cognizable offenses on counts IV and V because the charge to the jury "only requires that Mr. Studhorse touched JD1 not that he touched her on 'sexual or other intimate parts,' as required by the statute." Studhorse raises this issue for the first time on appeal. Our review is limited to obvious error. *State v. Pemberton*, 2019 ND 157, ¶ 22, 930 N.W.2d 125.

5

[¶19] We have explained that a non-cognizable offense is created by a "logical inconsistency." *State v. Borner*, 2013 ND 141, ¶¶ 7, 20, 836 N.W.2d 383. Specifically, this inconsistency is created by the combination of a specific intent offense having as an element a general intent offense. Our noncognizable offense cases have addressed attempt and conspiracy charges, both of which must be intentional. *See, e.g., id*. at ¶ 12; *Pemberton v. State*, 2021 ND 85, ¶¶ 11-12, 959 N.W.2d 891. To charge a logically consistent culpability, the underlying offense must have an intentional mens rea. In these cases, the culpability for the underlying offense allowed for a conviction on something less than intentional culpability.

[¶20] In *Pemberton v. State*, the jury instructions stated the defendant intentionally engaged in conduct to intentionally or knowingly cause the death of another human being. 2021 ND 85, ¶ 15. The jury was instructed that a defendant engages in conduct knowingly if "when they engage in the conduct, they know or have a firm belief, unaccompanied by substantial doubt, that they are doing so, whether or not it is their purpose to do so." *Id.* at ¶ 16. We determined these instructions allowed the jury to find the defendant guilty of attempted murder without finding the defendant intended to kill another human being. Thus, there was a logical inconsistency creating a non-cognizable crime. *Id.* at ¶ 17.

[¶21] Our jurisprudence on non-cognizable crimes consistently focuses on attempt and conspiracy offenses, which require a specific intent, having instructions specifying a general intent for the underlying offense. *Pemberton v. State*, 2021 ND 85, ¶ 13 (holding attempted knowing murder is a non-cognizable offense); *State v. Swanson*, 2019 ND 181, ¶ 15, 930 N.W.2d 645 (holding conspiracy to knowingly commit murder is a non-cognizable offense); *Dominguez v. State*, 2013 ND 249, ¶ 22, 840 N.W.2d 596 (holding attempted extreme indifference murder is a non-cognizable offense); *Borner,* 2013 ND 141, ¶ 20 (holding conspiracy to commit extreme indifference murder is a non-cognizable offense because "one cannot agree in advance to accomplish an unintended result").

[¶22] We conclude that lack of specificity in the jury instructions does not create a non-cognizable crime; rather, there must be a logical inconsistency in the intent elements charged. There is no error creating a non-cognizable crime, so there is not obvious error.

V

[¶23] Studhorse argues the jury instructions were improper because the essential elements do not identify specific conduct, so the jury was not required to have unanimous agreement

6

when it convicted him on counts I, II, IV, V, and VI. Studhorse concedes that he did not make an objection to the jury instructions at trial and contends that we review only for obvious error.

[¶24] "Under N.D.R.Crim.P. 30(c), to preserve a jury instruction issue for appellate review, a party must object on the record stating the issue 'distinctly' and specifying the grounds of his or her objection. If a party does not timely object, the issue is not preserved for review." *State v. Gaddie*, 2022 ND 44, ¶ 4, 971 N.W.2d 811. "Forfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment of a right." *State v. Watkins*, 2017 ND 165, ¶ 12, 898 N.W.2d 442 (citations omitted). Rule 52(b), N.D.R.Crim.P., applies only to forfeited errors. *State v. Rende*, 2018 ND 56, ¶ 8, 907 N.W.2d 361; *see also State v. White Bird*, 2015 ND 41, ¶ 23, 858 N.W.2d 642; *State v. Kautzman*, 2007 ND 133, ¶ 17, 738 N.W.2d 1.

[¶25] Here, Studhorse failed to preserve his claim of error as to whether the jury instructions were specific to distinguish between each charge. The district court asked counsel whether they wished to make any changes to the instructions, and Studhorse's counsel stated, "I don't believe so." A party waives an error when the party is given the opportunity to address it and intentionally relinquishes the opportunity. *See State v. Brewer*, 2017 ND 95, ¶ 5, 893 N.W.2d 184 (explaining waiver occurred when counsel stated "no objection" to admission of evidence).

[¶26] Studhorse cannot now complain about the lack of specificity when he waived the issue before the district court.

VI

[¶27] Studhorse argues the evidence was insufficient to convict him of counts I and II against Jane Doe 2 because there was contradicting evidence at trial about the alleged offense, and the testimony of Jane Doe 3, the only evidence supporting a conviction of the two offenses, was not given under oath. Studhorse concedes that this argument is not the specific argument in his Rule 29 motion at trial.

[¶28] "This Court has concluded that if a motion for judgment of acquittal was made at trial on specified grounds and those grounds did not include the claim on appeal, the defendant does not preserve that issue for review." *Dahl*, 2022 ND 212, ¶ 9 (citing *State v. Spillum*, 2021 ND 25, ¶ 9, 954 N.W.2d 673; *State v. Helm*, 2020 ND 155, ¶ 7, 946 N.W.2d

7

503). But we may exercise our discretion to review for obvious error to ensure the integrity of judicial proceedings. *Id.* at ¶ 12.

### A

[¶29]   Count I in the jury instructions charged Studhorse with gross sexual imposition in violation of N.D.C.C. § 12.1-20-03(1)(d), which provides in relevant part: "A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if: The victim is less than fifteen years old[.]" Under N.D.C.C. § 12.1-20-02(4), "sexual act" is defined in relevant part as sexual contact between "the mouth and the vulva." This count alleged the victim was Jane Doe 2, and "defendant initiated a sexual act between his mouth and the victim's vulva."

[¶30]   The State argues the entire record, viewed in a light most favorable to the verdict, establishes the defendant's guilt. The State relies on the forensic interviewer's testimony that a child may withhold information during an interview and children may not have a full memory of what happened to them.

[¶31]   Even with the testimony on lapsed memory, the State did not present sufficient evidence to infer the defendant placed his mouth on Jane Doe 2's vulva. Jane Doe 2 testified that the action did not happen.

> [The State]. Has Howard ever kissed your private parts?
> [Jane Doe 2]. No.
> Q. Did he ever kiss your middle part?
> A. No.

The other two minors were asked if they saw the defendant kiss Jane Doe 2's "body." Both replied "yes."

[¶32]   In *In re L.B.B.*, the defendant was convicted of committing a sexual act on the basis of testimony that the victim and defendant had a "sexual relationship." 2005 ND 220, ¶¶ 7-8, 707 N.W.2d 469. The State did not elicit specific details to aid the fact finder or provide a definition for sexual relationship. *Id.* at ¶ 7. Proof beyond a reasonable doubt of a "sexual act" as defined by statute is not satisfied by "inference based on one interpretation of a vague term." *Id.* at ¶ 8.

[¶33]   Both Jane Doe 1 and Jane Doe 3 understood the phrases middle part or private part but did not use either term to clarify that the defendant had kissed Jane Doe 2's vulva as

8

charged in count I. The State did not ask any clarifying questions. The count requires a showing of contact between the victim's vulva, not just the victim's "body," and the defendant's mouth. The evidence is insufficient to prove contact between the victim's vulva and the defendant's mouth. Because the evidence is insufficient to show a sexual act, it was error satisfying the first element of obvious error review.

[¶34] Next, under obvious error review, we determine whether this error was obvious. An error is obvious when it is "a clear deviation from an applicable rule under current law." *State v. Edwards*, 2020 ND 200, ¶ 10, 948 N.W.2d. 832. The only evidence in the record is that Studhorse kissed the victim's "body," which is too general to meet the legal definition of sexual act. Just as in *L.B.B.*, the evidence here was limited to a vague term not defined or explained. To enter a conviction of a class AA felony when the evidence consists only of a denial by the victim and vague testimony rather than the specific evidence of a defined sexual act we required in *L.B.B.* is a "clear deviation from an applicable rule under current law, which makes it plain under our precedent." *Dahl*, 2022 ND 212, ¶ 19 (quotations omitted).

[¶35] "A conviction based on insufficient evidence implicates constitutional due process and clearly affects substantial rights and the fairness, reputation, and integrity of the court system." *Dahl*, 2022 ND 212, ¶ 20 (quotations omitted). We conclude entry of a conviction for a class AA felony without evidence to support an element necessary to elevate the offense from a class A felony affects Studhorse's substantial rights. *See United States v. Rufai*, 732 F.3d 1175, 1189, 1195 (10th Cir. 2013) (reversing conviction for insufficient evidence under plain error review where defendant made different Rule 29 argument at trial and explaining "conviction in the absence of sufficient evidence of guilt ... almost always meets the first three factors of plain error review" and "only in a rare case" will the fourth factor concerning fairness, integrity, or public reputation of judicial proceedings not be met). We exercise our discretion to recognize obvious error and reverse Studhorse's conviction and sentence under count I of the jury instructions.

B

[¶36] Count II of the jury instructions charged Studhorse with gross sexual imposition in violation of N.D.C.C. § 12.1-20-03(2)(a), which provides in relevant part: "A person who engages in sexual contact with another, or who causes another to engage in sexual contact, is guilty of an offense if: The victim is less than fifteen years old[.]" Sexual contact means

9

"any touching . . . of the sexual or other intimate parts of the person . . . for the purpose of arousing or satisfying sexual or aggressive desires." N.D.C.C. § 12.1-20-02(5).

[¶37]   Jane Doe 2 testified the defendant engaged in sexual contact with her when he pulled down her underwear and touched her vulva. At trial, Jane Doe 2 was less than 15 years of age, so she was necessarily even younger when the alleged acts occurred. We affirm the conviction. *See State v. Schill*, 406 N.W.2d 660, 662 (N.D. 1987) (explaining under sufficiency of the evidence review, the uncorroborated testimony of a child may be sufficient to sustain a gross sexual imposition conviction).

## VII

[¶38]   Studhorse argues his convictions on counts II and V violate the double jeopardy provisions of the state and federal constitutions because the same conduct is alleged in counts I and IV respectively.

[¶39]   "An indictment is multiplicitous if it charges the same crime in two counts." *U.S. v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005).

> The constitutional guarantee against double jeopardy encompasses three separate protections: protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 769 n.1, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).

*State v. Moos*, 2008 ND 228, ¶ 13, 758 N.W.2d 674. "As to the sexual contact counts, we note a sexual contact charge may be a lesser included offense contained within a sexual act charge." *Gaddie*, 2022 ND 44, ¶ 14.

[¶40]   Studhorse did not preserve this claim with an objection in the district court, so this court may review only for obvious error. *See Dahl*, 2022 ND 212, ¶ 12.

## A

[¶41]   Studhorse argues his conviction on count II violates his right against double jeopardy because, as presented in the jury instructions, count II is a lesser included offense of count I. Because we reverse Studhorse's conviction under count I, we need not address Studhorse's double jeopardy relating to count II.

B

[¶42] Studhorse argues his conviction on count V violates his right against double jeopardy because there was not specificity in the jury instructions to ensure the jury did not use the same conduct to convict him of both counts IV and V.

[¶43] The jury instructions described counts IV and V by providing a charge to the jury and the essential elements:

> Count 4 - That on or about March 23rd, 2021, the Defendant Howard Studhorse engaged in a sexual act with Jane Doe 1, a thirteen year old, by causing his hand to come into contact with Jane Doe 1's anus, vulva, and breasts.
>
> The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:
>   1. On or about March 23rd, 2021, in Ramsey County, North Dakota, the Defendant, Howard Anthony Studhorse;
>   2. Willfully engaged in sexual contact with Jane Doe 1, or willfully caused Jane Doe 1 to engage in sexual contact;
>   3. Jane Doe 1 was less than fifteen (15)-years-old; and
>   4. The Defendant, Howard Anthony Studhorse, was more than five years older than Jane Doe 1 at the time of the offense.
>
> Count 5 - That on or about February or March 2021, the Defendant Howard Studhorse engaged in sexual contact with Jane Doe 1, a thirteen year old, by touching Jane Doe 1 after she had left the shower and was getting dressed.
>
> The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:
>   1. On or about February or March 2021, in Ramsey County, North Dakota, the Defendant, Howard Anthony Studhorse;
>   2. Willfully engaged in sexual contact with Jane Doe 1, or willfully caused Jane Doe 1 to engage in sexual contact;
>   3. Jane Doe 1 was less than fifteen (15)-years-old; and
>   4. The Defendant, Howard Anthony Studhorse, was more than five years older than Jane Doe 1 at the time of the offense.

[¶44] Both counts IV and V were charged under N.D.C.C § 12.1-20-03(2)(a). "When the defendant is charged with multiple counts of the same offense, the State has the burden to prove the defendant committed each offense." *State v. Martinez,* 2015 ND 173, ¶ 14, 865 N.W.2d 391. Here, we agree with Studhorse that the instructions for counts IV and V

permitted a conviction for both counts on the basis of the same conduct. Count IV charged Studhorse with touching the victim's anus, vulva, and breasts with his hand on or about March 23. Count V charged Studhorse with sexual contact by touching the victim after she had left the shower and was getting dressed in February or March. The jury could have used the same conduct to convict for both counts IV and V. These instructions were erroneous.

[¶45]  Next, under obvious error review, we determine whether this error was "plain" or "obvious." An error is obvious when it is "a clear deviation from an applicable rule under current law." *Edwards*, 2020 ND 200, ¶ 10. Each element requires proof of a different fact or element to distinguish the act as a separate punishable act. *See Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S. Ct. 180 (1932).

[¶46]  Here, counts IV and V are charged under the same statute, and the essential elements are identical except for the alleged dates of the offenses, which still fall in an overlapping time period. The charge to the jury above the essential elements does not meaningfully distinguish between counts IV and V. The touching with the hand alleged on March 23 could be the same touching that occurred after Jane Doe 1 left the shower. We conclude this is obvious error.

[¶47]  The error in this case implicates Studhorse's constitutional right against double jeopardy. The State has not shown this error was harmless beyond a reasonable doubt. Although counts IV and V are both class A felonies for which Studhorse received the same punishment, which will run concurrently, the error still affects his substantial rights. In *Moos*, we explained:

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. *See Benton v. Maryland*, 395 U.S. 784, 790-791, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *Sibron v. New York*, 392 U.S. 40, 54-56, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible

> punishment. [*Ball v. United States*, 470 U.S. 856,] 864-865, 105 S. Ct. 1668 [(1985)].

2008 ND 228, ¶ 22 (quoting *Rutledge v. U.S.*, 517 U.S. 292, 302, 116 S. Ct. 1241 (1996)) (quotations omitted).

[¶48]  We conclude this conviction was in violation of the constitutional right against double jeopardy. We exercise our discretion to recognize obvious error and reverse Studhorse's conviction on count V as listed in the jury instructions as duplicative to count IV.

## VIII

[¶49]  We reverse the criminal judgment as to counts I and V. The criminal judgment is affirmed in all other respects.

[¶50]   Jon J. Jensen, C.J.
     Jerod E. Tufte
     Douglas A. Bahr

**McEvers, Justice, concurring specially.**

[¶51]   I agree with the majority and join the opinion in all but one aspect: in section III, I would hold that the State's questioning of Detective Anthony and the responses were improper. The majority assumes the State's line of questioning was improper without deciding the issue, and ultimately concludes any error was harmless. Majority, at ¶¶ 12-14.

[¶52]  While I agree with the result reached in section III, I respectfully disagree that the use of Studhorse's silence by the prosecution should be viewed as neutral. This is not a case where the witness gave a nonresponsive answer. It is difficult to believe the State intended anything else in asking "Why was the interview discontinued?" other than to reference Studhorse's refusal to speak until he could consult an attorney. The State did not stop with one improper question but continued eliciting more references to Studhorse's desire not to speak to law enforcement without an attorney. In my opinion, the questioning and responses were clearly improper.

13

[¶53]  In *State v. Janda*, 397 N.W.2d 59, 65 (N.D. 1986), the prosecutor questioned the Sheriff about conversations with the defendant at the time of arrest, asking the following:

> Q: Did you ask him anything else?
>
> A: . . . I then asked, "Will you explain what happened this morning," to which he replied, "I think I had better get an attorney before I say anything more."

The defense objected arguing the statement was an improper reference to the defendant exercising his constitutional rights. *Id.* The objection was sustained, and the jury was instructed; nothing more was said about the matter. *Id.* Arguably, the Sheriff's response was, in part, nonresponsive to the question. Regardless, this Court held the Sheriff's testimony was an improper reference to the defendant's invocation of his right to remain silent and to consult with an attorney. *Id. (*relying on *Doyle v. Ohio*, 426 U.S. 610 (1976)). The Court held the error was harmless after considering the same factors we apply in this case. *Id.* at 66; Majority, at ¶ 12.

[¶54]  In this instance, I would follow the guidance of *Janda* and hold the questioning and testimony were improper, rather than just presuming the same. By deciding the issue, we give clearer guidance to prosecutors of the type of questioning to be avoided, rather than giving them carte blanche to push the limits.

[¶55]  Daniel J. Crothers
Lisa Fair McEvers